## John Clinton v. Benjamin H. Laning and Isaiah C. Laning.

*Duty of father to support an adult son—Only arises when he is a poor person within the meaning of How. Stat. sec. 1741—Where such condition is caused by the excessive use of intoxicating liquors—And such support is voluntarily assumed—Father may sue parties furnishing the liquors, under Act 191, Laws of 1883, for injury to his property—Without an adjudication of his liability by the circuit court under How. Stat. sec. 1742-3—Such voluntary outlay confined, for the purposes of such suit, to what might have been reasonably required in case of refusal, being the amount necessary for the humane and comfortable support of the son, and no more—This rule held not followed in the present case (see note, page 360)—Prospective support—Measured by son's probabilities of life—Must not be based on standard applied to sound and healthy person—But upon son's actual condition and prospects—And be limited, as to time, by the age of the father, whose estate would not be liable for such support—Bodily or mental sufferings of son or his parents cannot be considered by jury as affecting question of damages—Nor can damages be aggravated by liability of plaintiff to share same with his attorney—Legal costs are only allowable against a defendant.*

1. A father is not liable for the support of an *adult* son, unless he is a *poor* person within the meaning of How. Stat. § 1741.

2. Where a father, being of "sufficient ability," *voluntarily* assumed the support of an adult son pursuant to the duty imposed by How. Stat.

§ 1741, the son being a *poor* person within the meaning of such statute by reason of the excessive use of intoxicating liquors,—

*Held*, in a suit brought by the father under the provisions of Act 191, Session Laws of 1883, against the parties furnishing such liquor, to recover damages for injury to his property, that the father was not required to attempt to turn over the son to the custody of the superintendents of the poor before he could be regarded as under a *duty* of maintenance; that the *voluntary* assumption of such duty may fairly be regarded as a performance of such *legal* obligation, and that expenditures to a proper extent, within the limit which could be laid down by *compulsion*, are as valid charges as if they had been compelled, and may be considered on a similar footing.

*Held*, further, that in making such outlays *voluntarily*, nothing can fairly be included as a payment by *obligation* beyond what might have been reasonably required in case of refusal, as no one can claim to have been injured in his property by any outlay that he was not required to make, which would be such an amount as was *necessary* for the humane and comfortable support of a needy person, and no more.

*Held*, further, that in the present case this line seems to have been disregarded, and that the conduct of the plaintiff, while creditable to him, went very far beyond what any legal authority could have required of him under the statute cited.   (See note, page 360.)

3. In a suit brought by a father to recover damages for injury to his property, caused by the sale by defendants of intoxicating liquors to his son, who was *permanently* disabled thereby, prospective damages were allowed to be assessed by the jury, based on the son's probabilities of life, measured by the standard applied to *sound* and *healthy* lives.

    *Held*, error; that such probabilities should have been based upon the son's *actual* condition and prospects, and that the period of such *future* support should have been limited by the *age* of the *father*, upon whose death the responsibility for such support would not fall upon his estate.

4. In a suit by a father, under Act 191, Session Laws of 1883, to recover damages for injury to his property, caused by the sale of liquors to an *adult* son, whose support he had voluntarily assumed as a duty imposed by How. Stat. § 1741, the bodily or mental sufferings of the son or his parents cannot be considered by the jury as affecting the question of damages, nor can such damages be aggravated by reason of the liability of the plaintiff to give a share of the same to his attorney.

5. The legal costs are all that can be allowed against a defendant, and where a plaintiff begins a suit on shares the defendant cannot be made responsible for it by increasing the damages on that account.

Error to Genesee. (Newton, J.) Argued April 29, 1886. Decided May 6, 1886.

Case. Defendants bring error. Reversed. The facts are stated in the opinion and head-notes.

*Clarence Tinker* and *Long & Gold*, for appellants:

Unless plaintiff may invoke the aid of chapter 41, How. Stat., he cannot recover, even if all the facts he alleges in his declaration are admitted. This statute was enacted as a protection to the public, and not for the benefit of the poor person or his relatives.

Plaintiff could not recover for money voluntarily paid out for the use of his son, though he was morally bound to provide for him; he could not fix and determine the sum, chapter 41, How. Stat., having provided a tribunal for such adjudication and the manner of enforcing payment: *Mills v. Wyman,* 3 Pick. 212; *Loomis v. Newhall,* 15 Id. 163; and plaintiff could not suffer in his property until such an adjudication was made.

Damages awarded by any other mode would be entirely speculative, and any payments ordered under the statute must cease at plaintiff's death, his estate not being liable therefor, the burden being thereafter cast upon other relatives.

If damages could be measured at all upon the life probability theory, it could not extend beyond the probable future life of the plaintiff.

What does Act 191, Laws of 1883, mean by injury to *person,* injury to *property,* and injury to *means of support?*

If one assaults and beats and bruises another while intoxicated, or by reason of his intoxication, such a case would come clearly within this statute: *King v. Haley,* 86 Ill. 106.

If one, while intoxicated, injures another's *property* by destroying it by fire, by overdriving or by killing his horse, or in any other *direct* way, such a case would come directly within the meaning of this statute: *Mulford v. Clewell,* 21 Ohio St. 191; *Bertholf v. O'Reilly,* 8 Hun, 16.

If one is *legally* bound to provide for and maintain another, who, by reason of the intoxication of such person, is deprived wholly or in part of such means of support, such a case would come clearly within the provisions of this statute: *Hackett v. Smelsley,* 77 Ill. 109; and many other cases.

But to say that one is injured in his *property,* within the

meaning of this act, who has met with no *direct* injury thereto, and who has not been *legally* deprived of a dollar, is a proposition too absurd for consideration.

This statute was passed for a particular purpose, and cannot be enlarged or extended beyond its true intent and meaning. It must be strictly construed: *Freese v. Tripp,* 70 Ill. 496; *Meidel v. Anthis,* 71 Id. 241; *Fentz v. Meadows,* 72 Id. 540; *Hayes v. Phelan,* 4 Hun, 733; *Schneider v. Hosier,* 21 Ohio St. 110.

*Henry C. Riggs* and *Geer & Williams,* for plaintiff:

How. Stat. § 1742, provides for action by the superintendents of the poor *only* on the failure of the relatives named in § 1741 to provide for the support of the "poor person," and plaintiff can maintain his action without an adjudication of his duty to do that which he has voluntarily assumed to do: *McClay v. Worrell* (Nebraska), 24 N. W. R. 429.

The evidence as to the *actual* damage sustained was admissible, and the inquiry as to pain and suffering on the part of the son was merely to show the *nature* of the care he required and the necessity of two watchers: *Wightman v. Devere,* 33 Wis. 571.

The bills for medical attendance, and expenses incurred in care of patient, were a portion of the lawful damages recoverable: Id.; *Quain v. Russell,* N. Y. Weekly Digest, 546; *Mulford v. Clewell,* 21 Ohio St. 197.

CAMPBELL, C. J. This action was brought by a father, in advanced years, to recover damages from the defendants for his loss by being compelled to support a grown-up son who, being given to drinking, became grossly drunk at defendants' tavern, and on his way home had his feet and a hand badly frozen, so as to render him to a great degree helpless. The young man possesses no estate, and is therefore dependent, and in law a pauper. The father is well off, and has taken care of his son in the liberal way in which prodigal children are apt to be treated.

Two main and some subordinate questions are presented by the record. It is claimed no right of action accrues under circumstances such as exist here until the father has been required, by legal process, to contribute in some fixed

way to his son's support. It is also claimed that the verdict was allowed to be rendered on a wrong basis.

It is not seriously claimed that any action lies in this case out of the mere relation of parent and child. The son was not a minor, and the father was in no way injured by loss of his earnings, or deprived of any reliance for his own support. If an action lies at all, it is upon the ground that plaintiff has, in some way, been "injured in his property" by the casualty for which defendants are sought to be made responsible.

The statutes do not make a father liable for his son's support to any extent after majority, unless he has become subject to the condition of a pauper, and liable to be a public burden. In such a case, if able to do so, the law makes him responsible to such an extent as may be determined on a proper investigation. As the ability here is admitted, and the need of support is also admitted, there can be no doubt that plaintiff, if refusing, would be compelled to make necessary provision. The only question that would arise in case of his refusal would be as to the terms and manner of his contribution.

There is, no doubt, some difficulty in substituting a jury for the proper local authorities in getting at the proper estimate of expense. But we think the law does not require a father to attempt to turn over his son to the custody of the superintendents of the poor before he can be regarded as under a duty of maintenance. The law requires the parent, if able, to maintain the son "in such manner as shall be approved by the directors of the poor of the township where such poor person may be." How. Stat. § 1741.[1] It is only on failure to do so that any order becomes necessary, as provided by the subsequent sections.

---

[1]How. Stat. § 1741.—"The father, mother, and children, being of sufficient ability, of any poor person who is blind, old, lame, impotent, or decrepit, so as to be unable to maintain himself, shall, at their own charge, relieve and maintain such poor person, in such manner as shall be approved by the directors of the poor of the township where such poor person may be "

For a full discussion of this and succeeding sections, see *North v. Joslin*, 59 Mich. 625-7, and 648, and cases there cited.

We think that the voluntary assumption of this duty may fairly be regarded as performing a legal obligation, and that expenditures to a proper extent, within the limit which could be laid down by compulsion, are as valid charges as if they had been compelled, and may be considered as on a similar footing.

But in making these outlays voluntarily, nothing can fairly be included as a payment by obligation beyond what might have been reasonably required in case of refusal. No one can claim to have been injured in his property by any outlay that he was not required to make. The object of the statute is to save the public from a burden which, in the language of the statute, would have injured them in property. If those outlays can be recovered which affection and liberality naturally prompt friends and relations to make, the verdict, in a case like this, would be made heavier in proportion to the ability of the plaintiff to do without it, and not in proportion to what it takes to support one who is a public charge. If such a burden can be thrown upon defendants according to the will and liberal notions of a plaintiff, he will have no motive to economize, and his generosity will cease to be generous when exercised at the expense of another. The only loss to his property which is contemplated by law is such as the law imposes. This would be, in our opinion, such an amount as is necessary for the humane and comfortable support of a needy person, and no more. All beyond this, which affection may prompt, and which it is likely to furnish, must be regarded as a free-will offering, and not a legal duty.

In the present case this line seems to have been disregarded. The conduct of the plaintiff does credit to him, but went very far beyond what any legal authority could have required of him. The jury cannot be allowed to become respectors of persons, and must stop short when all is allowed that decency and humanity require.[1]

---

[1] The plaintiff's testimony tended to show that it was worth $25 to $30 per week to care for the son in his *present* condition (May 26, 1885), and had been worth that sum since the 19th day of February of

In the case before us another serious difficulty was presented. There was a double error in allowing the son's probabilities of life to be based on the standard applied to sound and healthy lives instead of upon his own actual condition and prospects. There was a further error in not limiting the period of support by the age of the father, upon whose death the responsibility would not fall on his estate. And it was a serious error to allow any questions of suffering, bodily or mental, of the son or of his parents, to be considered at all. The case does not differ at all in this respect from one brought by the superintendents of the poor, had they been compelled to bear the burden.

Neither could it be proper to consider the liability of plaintiff to give a share of the damages to his attorney as aggravating the damages. How far this may have entered into the account, if at all, we have no means of knowing; but the legal costs are all that can be allowed against a defendant, and if a plaintiff begins a suit on shares, the defendant cannot be made responsible for it.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.

---

the same year, and that the entire expense for nurses and attendants would amount to $500 up to his recovery from his injuries, after which such support would be worth from $300 to $600 per year, on the theory of his inability to perform manual labor and of his perfect helplessness; that during the period named it had required two attendants, day and night, to care for him, and that the medicines, fruits, lemons, and oysters purchased for his use had cost $5 per week; that his medical attendance had cost, up to date named, $140, and would amount to an additional $75 dollars.