MacDONALD v. QUIMBY.

APPEAL OF TenBRINK.

1. DEATH—DAMAGES—PECUNIARY INJURY.

The term "pecuniary injury," as used in the death act, as amended in 1939, includes the husband's right to recover for loss of his wife's services, a parent's right to recover for loss of a minor child's services less maintenance costs, and the loss of the spouse and next of kin to the extent that deceased was legally obligated to contribute to the support of any of them (CL 1948, § 691.582).

2. SAME—PECUNIARY LOSS BY MOTHER—VOLUNTARY OR COMPULSORY SUPPORT BY SON.

A mother's right to recover for pecuniary injury to her from the tortious loss of her son by a defendant does not depend on whether the deceased son made the support payments to the mother voluntarily or under legal compulsion (CL 1948, § 691.582).

3. SAME—SINGLE ACTION BY DECEASED'S ADMINISTRATOR.

The death act, as amended in 1939, clearly shows the legislature provided for 1 action for wrongful death, to be commenced by the administrator of the decedent's estate, thus avoiding a multiplicity of suits (CL 1948 § 691.581 et seq.).

4. SAME—PLAINTIFF ADMINISTRATRIX AS TRUSTEE.

The plaintiff administratrix in an action under the death act, as amended in 1939, occupies a trust relationship toward all who had a claim for damages against the defendant who had caused the wrongful death of the decedent (CL 1948, § 691.581 et seq.).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Death §§ 90–107, 182.
[2] 16 Am Jur, Death § 108 et seq.
[3] 16 Am Jur, Death §§ 262, 263.
[4] 16 Am Jur, Death § 266.
[5, 6, 8] 16 Am Jur, Death § 92.
[9] 16 Am Jur, Death §§ 98; 112.

5. WORDS AND PHRASES—NEXT OF KIN.

 The term "next of kin" means the nearest blood relation at both
 the common law and civil law.

6. SAME—NEXT OF KIN.

 The term "next of kin", as used in the death act, means the
 nearest blood relations who suffer a pecuniary injury and
 not all those who would take under the statute of distributions
 (CL 1948, § 691.581 *et seq.*).

7. DEATH—NEXT OF KIN.

 The death of the person whose next of kin is mentioned de-
 termines the membership of the class who are the next of
 kin.

8. WORDS AND PHRASES—HEIRS AT LAW—NEXT OF KIN.

 "Heirs at law" and "next of kin" are not synonymous terms.

9. DEATH—MOTHER—SUPPORTED BY SON—HEIR—NEXT OF KIN.

 The fact that petitioning mother would be entitled to inherit
 personal property of her son had he died intestate and childless
 and was not so entitled when he was survived by a wife and
 children would not eliminate her from the class of next of
 kin entitled to recover for pecuniary injury under the death
 act (CL 1948, § 691.582).

10. SAME—CONSTRUCTION OF STATUTES—AMBIGUITY.

 The death act, as amended in 1939, providing that the
 amount recovered in every action under the act "for pe-
 cuniary injury resulting from such death shall be distribut-
 ed to the surviving spouse and next of kin who suffered
 such pecuniary injury and in proportion thereof" and re-
 quiring that the judge before whom the case was tried cer-
 tify to the probate court the amount of the judgment "rep-
 resenting the total pecuniary loss suffered by the surviving
 spouse and all of the next of kin, and the proportion of such
 total pecuniary loss suffered by the surviving spouse and
 each of the next of kin of such deceased person" is not am-
 biguous (CL 1948, § 691.582).

11. APPEAL AND ERROR—REMAND—INTERVENTION BY MOTHER IN AC-
TION UNDER DEATH ACT.

 Action under death act in which plaintiff-administratrix ob-
 tained a consent judgment from defendant tort-feasor is
 remanded for making effective the relief sought by mother
 of deceased son who had contributed toward her support,
 for the pecuniary loss suffered by her by reason of the son's
 death, where her petition to intervene, which had been denied

by the circuit court, is granted by the Supreme Court (CL 1948, § 691.581 et seq.).

Appeal from Calhoun; Steinbacher (Harold E.), J. Submitted April 2, 1957. (Calendar No. 46,-819.) Decided October 7, 1957.

Case by Delorez E. MacDonald, administratrix of the estate of John R. MacDonald, deceased, against Chester A. Quimby and Lubracrome Corporation, a Michigan corporation, for damages resulting from death in motor vehicle collision, depriving wife and family of support. Eunice H. MacDonald TenBrink, mother of decedent, petitioned for leave to intervene, claiming to be a dependent. Petition dismissed. Consent judgment entered for plaintiff. Intervening petitioner appeals. Petition for leave to intervene granted and case remanded.

*McAuliffe & Harbert (J. W. McAuliffe,* of counsel), for defendants.

*Russell W. Conroy* and *Roger H. Nielsen,* for intervening petitioner.

Kelly, J. Plaintiff, as administratrix, commenced an action in the circuit court for the county of Calhoun, alleging that defendants' negligent acts caused her husband's death. The petitioner in intervention (appellant herein) contends that the court erred in denying her motion for leave to intervene, filed by her, as mother of the deceased who was receiving support from her son at the time of his death. The question presented has not previously been before this Court.

The wife of deceased filed her declaration on November 10, 1955, and defendants' answer was filed

on November 16, 1955. Petitioner, as mother of the deceased, filed her motion and petition for leave to intervene on December 20, 1955, alleging that she had been receiving support from her son during his lifetime and that she had need of such support; that the administratrix and her attorney refused to recognize this need, advising appellant that if she had any right to recover it would be by her own action in court, although appellant had informed the administratrix that the statute prevented such action; that a settlement between defendants and plaintiff was imminent and that said settlement would ignore her claim.

Petitioner prayed for an order granting her request to intervene and restraining the plaintiff-administratrix from taking any action which would jeopardize petitioner's rights in court.

Defendants answered the petition, denying the mother had the right to intervene because she "is not included among that class of persons entitled to recover for pecuniary injuries resulting from the wrongful death of plaintiff's decedent." Plaintiff also filed answer to the petition.

The court entered an order denying petitioner's motion and petition for leave to intervene on January 16, 1956, and on February 1, 1956, a consent judgment was entered in favor of plaintiff and against defendants in the amount of $30,000. On the same day the court entered an order for distribution of the judgment moneys. Satisfaction of the judgment was filed on February 6, 1956, and proof of service of notice of entry of judgment was filed on February 7, 1956.

Appellant asks for the following relief:

"Petition for leave to intervene should be granted, and the recovery had should be held to be for the benefit of *petitioner* as well as the legal heirs of John

R. MacDonald, deceased, in accordance with 'the pecuniary loss suffered.' "

The question presented calls for a construction of PA 1939, No 297, as it amended PA 1848, No 38 (CL 1948, § 691.581 *et seq.* [Stat Ann 1955 Cum Supp § 27.711 *et seq.*]), and more particularly CL 1948, § 691.582 (Stat Ann 1955 Cum Supp § 27.712), which provides:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death: Provided, however, That such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the total pecuniary loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person, as

shown by the evidence introduced upon the trial of such case. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total pecuniary loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be distributed according to the intestate laws."

Previous to the 1939 amendment, PA 1848, No 38, entitled "An act requiring compensation for causing death by wrongful act, neglect or default," provided, by section 2 thereof, as amended by PA 1873, No 94, as follows:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and the amount recovered in every such action, shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered." (CL 1929, § 14062 [Stat Ann § 27.712]).

A comparison of the act before the 1939 amendment with the act after amendment, establishes the following:

(1) The words "next of kin" were not mentioned in the act before amendment, and were inserted 5 times in the amended section.

(2) Approximately the first half of the amended section does not discuss or provide for distribution and in this half there is no reference to heirs-at-law

or next of kin and those entitled to damages are described as a *"class* (emphasis ours) who, by law, would be entitled to inherit the personal property of the deceased had he died intestate." The word *"*class" was not used in the act before amendment.

(3) That the title of the amended act adds the words "to prescribe the measure of damages recoverable and the distribution thereof; and to repeal inconsistent acts."

(4) In the amended act when the words "next of kin" are used, they are in each of the 5 occasions coupled with the word "spouse," as follows: "surviving spouse and next of kin;" "surviving spouse and all of the next of kin;" "the surviving spouse and each of the next of kin;" "surviving spouse and next of kin;" and "surviving spouse and the next of kin." Neither the words "surviving spouse" or "next of kin" are found in the act before amendment.

(5) The amended act provides that damages for pain and suffering of deceased during the period intervening between the time of injury and death shall be distributed without regard to pecuniary loss but according to the intestate laws. Before the amendment, no such provision existed.

The meaning of the words "pecuniary injury" as used in the amended act is definitely established in *Baker* v. *Slack,* 319 Mich 703, 714, as follows:

"The remaining question is, what is meant in the 1939 act by 'pecuniary injury' to decedent's surviving spouse or next of kin. Does this include things so speculative and nebulous as the fondly nurtured hope of an inheritance, enhanced by redress for decedent's wrongful death, but suspended by the tenuous cord of decedent's possible intestacy? Assuredly not. In the *Olney Case* (*In re Olney's Estate,* 309 Mich 65) we recognized that, beyond compensation to a husband for loss of his wife's services, the right

to recover for pecuniary loss must be predicated upon the existence of some next of kin having a legally enforceable claim to support or maintenance by deceased.

"In both the *Olney Case* and the *Grimes Case* (*Grimes* v. *King,* 311 Mich 399) we pointed out that the provision in the 1939 act for compensation for 'pecuniary injury' is identical with that in the old death act. (There is, of course, a change as to method of and persons to whom distribution is made under the 1939 act.) Under the old death act in construing the term 'pecuniary injury' recoverable under the act, we have uniformly held that, in addition to the husband's right to recovery for loss of his wife's services (or parent's right to recovery for loss of minor child's services) after deduction of her maintenance costs, further recovery could be had only for those persons who would have been entitled to inherit deceased's personal property had he died intestate (under the 1939 act this is changed to surviving spouse and next of kin), and for them only to the extent that deceased was legally obligated to contribute to the support and maintenance of any of them."

No one disputes the fact that defendants caused pecuniary injury to the petitioning mother. Her right to recovery does not depend on the question as to whether her deceased son made the support payments voluntarily or under legal compulsion, as is established in our finding in *Judis* v. *Borg-Warner Corporation,* 339 Mich 313, 326, wherein we stated:

"Defendant claims error on the ground of submission to the jury of plaintiff's claim for loss of decedent's support, alleging that there was no proof of a fixed legal obligation of decedent to support his father, nor of the father being in need of his son's support.

"There is sufficient testimony in the instant case to support plaintiff's claim that his deceased son voluntarily assumed to contribute an average of $25

a month toward plaintiff's support, without any order requiring him (decedent) so to do, and within the ruling of this Court in *Clinton* v. *Laning,* 61 Mich 355, in which we say, p 360, in the converse case of a father voluntarily assuming to support his adult son without an order of the directors of the poor,

" 'We think that the voluntary assumption of this duty may fairly be regarded as performing a legal obligation, and that expenditures to a proper extent, within the limit which could be laid down by compulsion, are as valid charges as if they had been compelled, and may be considered as on a similar footing.' "

The statute clearly shows that the legislature provided for 1 action for wrongful death, to be commenced by the administrator or administratrix, thus avoiding a multiplicity of suits. We find that the plaintiff-administratrix in this case occupied a trust relationship toward all who had a claim for damages against defendants, and we quote with approval from *Wiener* v. *Specific Pharmaceuticals, Inc.,* 298 NY 346, 350 (83 NE2d 673); and *Janes* v. *Sackman Bros. Co.* (CCA), 177 F2d 928.

In the *Wiener Case,* the New York court said:

"Not only does the wrongful death statute provide that the amount recovered for such pecuniary injury 'shall be distributed to the surviving spouse and next of kin' ([CL 1948, § 691.582] Stat Ann 1955 Cum Supp § 27.712), but, as noted, its companion distribution statute prescribes that, funeral expenses excepted, 'such proceeds shall not be liable for the payment of any other charges against the estate of the decedent' ([CL 1948, § 702.115] Stat Ann 1943 Rev § 27.3178 [185], subd [6]).

"There can be no doubt, considering all this, that the damages allowable in Michigan for a pecuniary injury resulting from wrongful death are referable solely to the loss suffered by the persons designated. That being so, the amount of recovery is held

subject to a special trust, and the administrator seeking such recovery is, by the same token, a statutory trustee."

In *Janes* v. *Sackman Bros. Co., supra,* it was stated (pp 933, 934):

"As we have pointed out in discussing the earlier issue, the recent Michigan cases, *In re Olney's Estate,* 309 Mich 65; and *Baker* v. *Slack,* 319 Mich 703, both *supra,* make it clear that the 1939 amendments to the Michigan death act have created a unitary action for death and survival. The plain wording and obvious intent of the statute is to make an administrator a statutory trustee for the entire unitary action."

This Court in November, 1938, handed down its opinion in *In re Venneman's Estate,* 286 Mich 368, which resulted in legislative action in the following year and the passing of the amendment to the section under consideration in this appeal.

In the *Venneman* decision, this Court, after stating that the issue presented had not previously been before the Court, regretfully held that the statute required the Court to find that the amount recovered by a widow, as administratrix of the estate of her husband, in a settlement of an action brought under the death act, must recognize the rights of decedent's adult son by a former marriage to share in the amount so recovered, in spite of the fact that said adult son was in no way dependent upon his father for support, and stated (p 373):

"We are of the opinion that the portion of the statute reading 'in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered' merely provides the manner of determining the amount of the damages to be recovered. When the amount of dam-

ages has been determined it is then to be distributed 'to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate.' "

What does the term "next of kin" signify? 51 CJS 453 answers this question as follows:

"Primarily, and under both the common law and the civil law, the phrase 'next of kin' signifies nearest blood relation; and this is the technical, legal, and literal meaning of the term."

A note in 15 LRA 300 defines "next of kin" by stating:

"The words 'next of kin' mean blood relatives. *Jones* v. *Oliver,* 38 NC 369.    *   *   *

"The words 'next of kin' in a will mean the nearest blood relations and not all those who would take under the statute of distributions. *Fargo* v. *Miller,* 150 Mass 225 (22 NE 1003, 5 LRA 690); *Swasey* v. *Jaques,* 144 Mass 135 (10 NE 758, 59 Am Rep 65)."

In *Clark* v. *Mack,* 161 Mich 545, 549, 550 (28 LRA NS 479), this Court said:

"This brings us to the question: Who were the nearest of kin? In the absence of a contrary intent, a gift to next of kin is a gift to the nearest of kin in the strictest sense, excluding persons who, under the statute of distribution, would be entitled to take by representation. Thus a brother or sister would take to the exclusion of the children of a deceased brother or sister. Remsen on Wills, p 101; 2 Jarman on Wills (6th ed), p 953;* 2 Underhill on Wills, § 626; Rood on Wills, § 456.

"The term 'nearest of kin,' in the will, signifies those who stand in the nearest relationship to the intestate according to the rules of the civil law for computing degrees of kinship. In this will there are no words suggesting that any one is to take by

_____
* In 6th Amer ed (1893), vol 2, p 112.—Reporter.

the right of representation. But that idea is excluded by the words employed: 'It shall then be divided among the nearest of kin.' They were the brother, Walter Coe, and the sister, Ursula Gilfillin, surviving at the death of the testatrix. *Van Cleve* v. *Van Fossen,* 73 Mich 342. The death of the person whose next of kin is mentioned determines the membership of the class."

Appellees discount the fact that the distribution part of the amended section contains the term "next of kin" 5 times and that this term was not in the section previous to amendment, by stating: "It is our contention that heirs at law and next of kin are synonymous terms as used in the statute and as such are used indiscriminately to mean the same group of persons."

Appellees admit that when a layman uses the term "next of kin" in his will he would "be expected to refer to degrees of kinship and have reference to the meaning of the term according to the civil law," but contend that an opposite result is reached when the term is used in the statute.

We cannot agree with appellees' contention that "heirs at law and next of kin are synonymous terms," or that for this Court to rule otherwise would delete and make inoperative the words found in the first half of the amended section "that such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate."

The petitioning mother was of a class who would be entitled to inherit the personal property of the deceased had he died intestate. The fact that she would not inherit if he died intestate leaving a wife and children would not eliminate her from that class.

There is no ambiguity in the words of the statute which provide "the amount recovered in every such

action for pecuniary injury resulting from such death *shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereof.*" (Emphasis ours.)

Nor is there ambiguity in the provision that "the judge before whom such case was tried * * * shall certify to the probate court * * * the amount thereof representing the total pecuniary *loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person.*" (Emphasis ours.)

The amendment was brought about because of the *Venneman* decision, *supra,* which brought into focus the injustice of taking from the surviving wife part of the damages collected and dividing said damages with a son of the deceased by a former marriage who did not suffer pecuniary damages because of the tortious act.

It is impossible for the writer of this opinion to conclude that in meeting such injustice the legislature created another injustice—namely, to hold blameless, as far as damages are concerned, one who brought to his death a son who was contributing to the support of his mother. Neither can we justify the statement in defendants' answer to the mother's petition to intervene that she had no such right because she "is not included among that class of persons entitled to recover for pecuniary injuries resulting from the wrongful death of plaintiff's decedent."

The circuit court will enter an order granting the mother's petition for intervention and setting aside the consent judgment and the certificate. The cause shall proceed either to trial or to judicially approved settlement, with particular attention directed

toward the protection of the minor children's rights and interests.

DETHMERS, C. J., and SHARPE, EDWARDS and CARR, JJ., concurred with KELLY, J.

BLACK, J. (*concurring in reversal*). I agree with Mr. Justice KELLY's verdict. The decedent's mother, if in fact wholly or partially dependent on her son for support when he came to his death, is (with the widow and minor children) an eligible beneficiary of the cause of action which by defendants' admission arose at the son's death. Any "next of kin," *i.e.*, blood relative, is a rightful beneficiary in such case provided he or she is shown to have been dependent in fact or law on the decedent when death occurred and is a member of the statutory "class" from which, in the variant circumstances of succession, the inheritor or inheritors of the personal estate of one dying intestate are selected. Consequently, our unitedly-viewed statutory provisions—of 1939—departed for good reason from that which obtained in Michigan prior to their effective date (see *In re Venneman's Estate*, 286 Mich 368). They similarly vary from statutory provisons common to many other States.*

There is more to be said, however. My Brother reaches the conclusion to which I give assent exclu-

---

* American Jurisprudence gives us the general design of statutes to which allusion is made (16 Am Jur, Death, § 107, pp 76, 77):

"§ 107. Preferred Classes of Beneficiaries.—According to the provisions of many wrongful death statutes, the persons for whose benefit the action may be maintained are divided into classes based upon their natural dependency upon the deceased; these classes are virtually exclusive—that is, the right of action inures for the benefit of the first preferred class, if there are in existence any beneficiaries belonging to that class, and, if there are none, then to the class next in line of preference. In other words, the nonexistence of the preferred beneficiaries is essential to a right of action in behalf of the other beneficiaries. Generally, the surviving spouse and children are the first preferred; then follow the next of kin or the parents and next of kin."

sively through interpretation of the so-called death act of 1939 (PA 1939, No 297, approved June 20, 1939 [CL 1948, § 691.581 *et seq.* (Stat Ann 1955 Cum Supp § 27.711 *et seq.*)]); whereas I arrive at the same destination by interpreting sections 1 and 2 of the mentioned death act, and sections 114 and 115 of chapter 2 of the probate code (PA 1939, No 288, approved June 20, 1939 [CL 1948, §§ 702.114, 702.-115 (Stat Ann 1943 Rev §§ 27.3178 [184], 27.3178 [185])]), in array together. These statutes "must receive such a construction as will render each consistent with the other."*

It must be faced and then confessed that the mentioned enactments, if separately viewed, are fraught with patent as well as latent ambiguities. For instance, and in the case of probate-approved adjustment of a cause for wrongful death of an infant survived by parents, or of a wife survived solely by spouse, how can the probate court distribute proceeds under said section 115, subd 4, to "dependents of the decedent" absent new and flexible interpretation—assisted by said section 2—of the word "dependents"? Correspondingly, where suit is commenced followed by entry of judgment for an amount representing loss of the decedent's services, does the circuit judge recommend distribution of the recovered amount to "dependents" of the deceased? That questions of such nature are apt to arise in conjunction with this case is to suggest that something remedially new is before us; that earlier decisions of this Court are of little aid; that the absence of similar legislation in other States calls for thought afresh as we proceed to construe these allied stat-

---

* The purpose of the legislature, where statutes *in pari materia* are involved, is to be ascertained by reading all such statutes as one. *People, ex rel. Hughes,* v. *May,* 3 Mich 598; *Palmer* v. *State Land Office Board,* 304 Mich 628; *Reed* v. *Secretary of State,* 327 Mich 108; *Michigan Good Roads Federation* v. *State Board of Canvassers,* 333 Mich 352; *Van Antwerp* v. *State,* 334 Mich 593.

utes, and that we proceed on safe ground only by looking at them as unitary.

That which follows will, of course, apply only to the type of case before us—that of death of an adult male survived by a dependent widow, dependent minor children, and a dependent mother.

. *First:* Said section 2 directs that the amount recovered in circuit, *for pecuniary injury,* "shall be distributed to the surviving spouse and next of kin *who suffered such pecuniary injury* and in proportion thereto." Said section 115, having directed that the amount so recovered "shall be distributed in such manner, to such persons, and in such amounts as hereinafter set forth," and having provided for notice and hearing precedent to the distribution each act (death act and probate code) calls for, requires the probate court to:

"Enter an order distributing such proceeds only to those persons who were *dependents* of the *decedent* and in such amounts as to said court shall seem fair and equitable considering the relative damages sustained by each of *such dependents* by reason of the decedent's wrongful death."

So far no interpretive difficulty appears. "Next of kin who suffered such pecuniary injury" (the mother as dependent blood relative qualifies here), and "dependents of the decedent" (she was a dependent of the decedent if the allegations of paragraph 3 of her petition for intervention are established), concordantly make up the legislative purpose preambled above. Defendants point, however, to the proviso of section 2 of the mentioned death act:

"That such person or persons entitled to such damages shall be of that class who, by law would be entitled to inherit the personal property of the deceased had he died intestate;"      .

and assert that the mother is thereby disqualified as a beneficiary because, a widow and minor children having survived the decedent, she is not an heir of the decedent's personalty.

That the contention would gather prima facie force had the proviso been left by the legislature to stand alone is not to be denied. While counsel do not brief it as such, their point in actuality is addressed to previously-mentioned rules known in other States, by which beneficiaries are divided into alternative classes, consisting of primary, secondary and deferred groups. The contention loses impact here, however, for reasons peculiar to our mentioned enactments of 1939. As in *Poff* v. *Pennsylvania R. Co.,* 327 US 399, 401 (66 S Ct 603, 90 L ed 749, 162 ALR 700, 702), "The emphasis on dependency suggests that congress (in our case the legislature) granted the right of recovery to such next of kin as were dependent on the deceased."* In short, and if there be abrasion—which we need not decide— between the quoted proviso of section 2, and the command of section 115 (that distribution be made to "dependents of the decedent"), the latter must prevail in order that the 2 statutes accomplish that which we have found—and stated above—to be the emphasized purpose of the legislature. This means that the mother's timely petition for leave to intervene should have been granted and that the appealed order denying such petition must be reversed.

By way of parenthetical conclusion it is not amiss to note that *Bricker* v. *Green,* 313 Mich 218 (163

---

* In the *Poff Case* the supreme court considered and overruled contention that the Federal employers' liability act ([April 22, 1908] 35 Stat 65, ch 149, 45 USCA, § 51) denied eligibility to a dependent cousin of the decedent. By citation of *Poff* we do not infer that the Federal act duplicates, in substance or otherwise, presently considered sections 1, 2 and 115. We do find, as the court did in *Poff,* that the legislative emphasis on dependency is controlling. See reference to *Poff* in *In re Hopps' Estate,* 324 Mich 256, 260.

ALR 697), stands precursive of broad rather than narrow interpretation of questions of eligibility arising under this legislation of 1939, particularly where actual dependency is shown. In that case it was shown that the decedent, a mother survived by her husband and 10 dependent children, came to demise by wrongful act. The surviving husband, having been contributorily negligent,[*] was ineligible and, hence, renounced claim as one of the beneficiaries of the cause of action. The defendant insisted (see counterstated question 6, p 225 of report) that the action failed for want of "a person suffering pecuniary loss" and relied, in part, on authority supporting the rule stated in 17 CJ, Death, § 61, p 1215:

"The fact that a beneficiary of a prior class is precluded from recovery by reason of some defense available against him does not authorize prosecution of the action for the benefit of persons in a subsequent class."

Reviewing the question posed by counterstated question 6, this Court ruled that the testimony showing actual partial support of the children by the mother disclosed that they "suffered pecuniary loss by reason of her untimely death." While the writer of the opinion did not elaborate (excepting as presently noted), the briefs show that said section 115, subd 4, was pressed upon the court as indicative of legislative intent that proven dependency in fact, of any next of kin, renders such dependent or dependents eligible regardless of presence or absence of other rightful beneficiaries. The writer did note, without reference to said section 115, that "Under the (death) act as now amended the distribution of the damages awarded is determined by the probate judge." (p 227 of report.)

---

[*] See annotation, "Contributory negligence of beneficiary as affecting action under death or survival statute," 2 ALR2d 785.

*Second:* Having determined that the mother was and now is entitled to subordinately intervene in the pending suit,* certain procedural questions remain for disposition considering summary action taken in circuit following denial of the petition for intervention. The order of denial was entered and filed January 16, 1956. Ten days later the court entered a consent judgment in favor of the plaintiff fiduciary and against the defendants, in the sum of $30,000. On the same date the court executed a certificate under said section 2 designating the widow and the decedent's 2 minor children as sole distributees.† Judgment was satisfied of record February 6th.

In the meantime counsel had prepared application for leave to review the order of January 16th. The required concise statement was presented for settlement, on notice given counsel January 26th, and a hearing on settlement was conducted by Judge Steinbacher January 30th. Such hearing was adjourned for briefs to be filed respectively February 14th and February 29th. The question counsel did brief, presently mentioned, was not decided until March 23, 1956.

We intimate no criticism of the delay in settlement of concise statement. The judge was confronted with briefed and ultimately overruled objection of defendants that jurisdiction to settle such statement had been lost due to nonsettlement within 20 days following date of the order sought to be appealed. Nevertheless, the fact that the court plunged ahead with entry of judgment—ex parte so far as the mother was concerned—, when the mother's timely proceeding to appeal the order of Jan-

---

* This is not to say that the mother is entitled to become a contending party plaintiff. It is to say that she has pursued the only procedural means by which her claimed benefactive status could be brought to attention of the court for timely consideration.

† The judgment and certificate are each dated January 26. They were not filed, however, until February 1.

uary 16th was pending, renders it necessary that proper directions be issued under section 1 (g) of Court Rule No 72 (1945).

An order will enter in circuit granting the mother's petition for intervention and directing that the declaration be amended so that same include the substance of her present allegation of dependency. The consent judgment and the certificate* will be set aside and the cause will proceed, either to trial or judicially approved adjustment, as interested parties may be advised and the court shall approve or reject. In event new proceedings designed to adjust before trial are pursued in circuit, the court will take testimony and determine the mother's allegation of dependency. In such event, and if the mother's allegation of dependency is sustained, the court will appraise settlement worth of the declared and admitted cause anew with particular attention to protection of the interests of the minor beneficiaries.

Reversed and remanded for further proceedings as directed. Costs to appellant, taxable against defendants.

SMITH, EDWARDS and VOELKER, JJ., concurred with BLACK, J.

---

* The circuit court certificate, called for by said section 2, is advisory rather than mandatory. The sole exception, provided in said section 115, subd 4, is the requirement that the probate court follow the certificate "in the absence of written objections thereto filed by any interested party." As far as identity of distributee beneficiaries and proportions payable to them are concerned, the probate court (subject to the noted exception) decides such matters as original questions. This was ordained, probably, to insure uniformity of distributive rights and results whether the cause be adjusted in probate—pursuant to section 114 of said chapter 2 without institution of suit—or determined by judgment in circuit.