RYTKONEN *v.* CITY OF WAKEFIELD.

1. AUTOMOBILES — MOTORCYCLIST — CONTRIBUTORY NEGLIGENCE — PRESUMPTIONS—EYEWITNESSES.

   A presumption of freedom from contributory negligence is to be indulged on behalf of motorcyclist who was killed at night upon collision with unlighted street barricade in an accident to which there were no eyewitnesses.

2. HIGHWAYS AND STREETS—BARRICADES—CONTRIBUTORY NEGLIGENCE —EYEWITNESSES—EVIDENCE.

   Defendant city was not entitled to a directed verdict on ground of contributory negligence as a matter of law on part of plaintiff's decedent, a motorcyclist, whose vehicle collided with unlighted street barricade on stormy night, at 1:30 a.m., where there were no eyewitnesses to the accident and evidence presented a question of fact for jury as to contributory negligence of decedent.

3. SAME — NEGLIGENCE — DIRECTED VERDICT — BARRICADES — ATMOSPHERIC CONDITIONS—EVIDENCE.

   Defendant city *held,* not entitled to a directed verdict in action by estate of deceased motorcyclist for lack of proof of negligence on city's part in failing to warn oncoming traffic of

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  25 Am Jur, Highways § 573.
[2, 3]  25 Am Jur, Highways §§ 415, 416, 482, 591.
   Liability of municipality for injury or damage by automobile colliding with temporary obstruction in connection with alteration or repair of street. 100 ALR 1386.
[4]  5A Am Jur, Automobiles and Highway Traffic §§ 290–292.
   Liability for motor vehicle accident where vision of driver is obscured by smoke, dust, atmospheric condition, or unclean windshield. 42 ALR2d 13.
[5]  58 Am Jur, Witnesses § 862.
[6]  5A Am Jur, Automobiles and Highway Traffic §§ 26, 27.
   Liability for collision on ground of absence or insufficiency of lights on parked or standing motor vehicles. 21 ALR2d 95.
[7]  25 Am Jur, Highways §§ 348, 349.
[8]  39 Am Jur, Parties § 9 *et seq.*
[9]  16 Am Jur, Death §§ 209, 228.

existing danger, where evidence shows street barricades were unlighted at 1:30 a.m. on stormy night, known to be so by city policemen whose cars were equipped with railroad fusees which might have been placed when flares were found to be out in storm which prevented vision for more than 25 or 30 feet.

4. SAME—BARRICADES—ASSURED CLEAR DISTANCE AHEAD—INSTRUCTIONS.

Jury in action by administratrix of estate of deceased motorcyclist against city in whose street decedent died from injuries received when he collided with unlighted barricade at night *held*, not to have been misled by improperly worded instruction as to decedent's violation of assured clear distance ahead statute in view of subsequent corrective language of instructions (CLS 1956, § 257.627).

5. SAME — BARRICADES — INSTRUCTIONS — PRESUMPTIONS — CREDIBILITY OF WITNESSES—QUESTION FOR JURY.

Instruction relative to presumption of due care on part of plaintiff's decedent motorcyclist which, in effect, charged simply that the credibility of witnesses was for the jury to decide *held*, without error in action against city whose street barricades were unlighted at 1:30 a.m. on a stormy night.

6. SAME—PARKED VEHICLES—LIGHTS—APPLICATION OF STATUTE—INSTRUCTIONS.

Instruction containing sections of the statute requiring vehicles parked on the highway after dark to have certain lights displayed thereon *held*, not to have been reversible error, where court also instructed jury such statutes were inapplicable as to bulldozer on part of street closed to public travel (CLS 1956, §§ 257.694, 257.695).

7. SAME—CONDITION OF STREET FOR TRAVEL—INSTRUCTIONS.

Omission by trial court of word "reasonably" in instruction relative to defendant city's duty as to maintenance of street not closed to public travel *held*, error, but not prejudicial, nor to have misled the jury under all the facts in the case and proofs concerning defendant's negligence (CLS 1956, § 242.1).

8. DEATH—MOTHER OF DECEDENT—VOLUNTARY SUPPORT BY NONRESIDENT SON.

Plaintiff, as mother of decedent motorcyclist who was killed when he collided with unlighted street barricade at 1:30 a.m. on a stormy night, was in the class of next of kin suffering pecuniary loss recoverable under the death act, where evidence shows

decedent, a nonresident, was voluntarily and continually contributing to her support (CL 1948 and CLS 1956, § 401.2 *et seq.*; CL 1948, § 691.581 *et seq.*).

9. SAME — DAMAGES — LIFE EXPECTANCY — CONTRIBUTION OF SON — SPECIAL DAMAGES.

Verdict of $22,000 for plaintiff, mother of decedent motorcyclist, who had a life expectancy of 10 years, *held*, not excessive, where it appears decedent had life expectancy of 35 years, had been contributing to her support for 12 years, for the last 2 or more at upwards of $1,500 a year, and special damages were stipulated at somewhere under $2,000.

Appeal from Gogebic; Wright (Robert R.), J. Submitted April 11, 1961. (Docket No. 47, Calendar No. 48,238.) Decided September 22, 1961.

Case by Anna Rytkonen, administratrix of the estate of William Rytkonen, deceased, against the City of Wakefield, a municipal corporation, under the death act for damages arising from her son's death in a motorcycle accident caused by defective and unsafe condition of street. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Cloon & Cloon,* for plaintiff.

*Robert A. Burns* and *Wright & Zinn (Ivan D. Wright,* of counsel), for defendant.

DETHMERS, C. J. Defendant appeals from a $22,000 judgment in favor of plaintiff for the wrongful death of her decedent.

For a sewer construction project, defendant caused excavations to be made in its streets. The accident involved occurred at the intersection of Putnam boulevard and Fourth avenue. Putnam is a divided street with 2 lanes, 22 feet in width, for southbound traffic, separated, by an island 10 feet wide, from 2 similar lanes for northbound traffic. Fourth

avenue crosses it, running east and west. An excavation had been made across the 2 southbound lanes of Putnam along the south line of Fourth avenue. This was refilled with dirt to a level of about 1 foot higher than the street. At the end of the work day a bulldozer was left in the center of the southbound lanes, just south of the intersection, at the point of the filled-in excavation. Sawhorse barricades were placed north of the bulldozer, barring entrance into the southbound lanes beyond that intersection. A white detour sign with black letters, fastened to the barricade, directed southbound traffic, at that point, to cross over to the east side of the island and to continue south in 1 of the 2 lanes otherwise devoted to northbound traffic. Three bomb-type flares were placed there, one 6 feet north of the barricade, 1 east, and 1 south of the bulldozer. At 7 p. m. a city policeman lighted the flares.

A city policeman, who went on duty at about 11 p. m., drove a squad car past that intersection about every half hour between then and 2 a. m. An extremely heavy wind and rainstorm arose. The street lights were on at all times, but at about 12:30 a. m. the policeman noticed that the bomb lights had gone out. He relighted them and proceeded on patrol in his car. Five minutes later he returned and saw that the bomb lights were still lit. Shortly after that the rain and storm became severe. At about 1:15 a. m. he again drove past the intersection and saw that the bomb lights were out. It was raining so hard that he concluded that it would be impossible to relight the flares and so he drove on. The accident occurred at about 1:30 a. m. Some 15 minutes later the policeman again passed that way, saw that the flares were still out and thought that it was raining too hard to do anything about it. He did not see the evidence of the accident which had just

occurred. He could see ahead only 25 to 30 feet because of the storm and rain.

At about 1:30 a. m. plaintiff's decedent left a bar 2-1/2 blocks north of the intersection. He got on his motorcycle and headed south at 30 to 35 miles per hour. His motorcycle struck and broke the east sawhorse barricade and grazed the east end of the bulldozer. About 2 hours later his broken motorcycle and lifeless body were found a short distance east and south of the east end of the bulldozer.

Defendant's motions for directed verdict and for new trial were denied.

On appeal defendant says that decedent was guilty of contributory negligence as a matter of law in driving his motorcycle at a speed greater than would permit him to bring it to a stop within the assured clear distance ahead, citing *Elrich* v. *Schwaderer,* 251 Mich 33; *Russell* v. *Szczawinski,* 268 Mich 112; *Waterstradt* v. *Lanyon Dock Co.,* 304 Mich 437; *Winslow* v. *Veterans of Foreign Wars National Home,* 328 Mich 488; *Nevill* v. *Murdey,* 333 Mich 486; and *Morrison* v. *Demogala,* 336 Mich 298. Are these cases necessarily controlling in view of the proofs in this case? We think not. There is no showing of decedent's speed during the last 2 blocks, nor as to whether he saw what he should have seen and attempted to stop or to avoid the barricade. There were no eyewitnesses as to decedent's acts, or failure to act, which would bear on the question of his contributory negligence. Having been killed at the scene of the accident, a presumption of his freedom from negligence is to be indulged. *Petersen* v. *Lundin,* 236 Mich 590; *Gembolis* v. *Rydeski,* 258 Mich 521. Furthermore, there was testimony sufficient to go to the jury on whether the excavation and refilling and movement of dirt by defendant had caused or permitted a soupy, muddy, slippery condition to develop in the rain on the pavement for a distance

of some 30 feet from the barricade north. Whether such condition existed presented a jury question. If so, even if not shown to have been due to negligence of defendant, as it urges, this would bear on the question of decedent's freedom from contributory negligence, and whether the above cases cited by defendant are, therefore, inapplicable and the decisions in the patch-of-ice cases, such as *Diederichs* v. *Duke,* 234 Mich 136, instead, are in point. Defendant stresses lack of skid marks as discounting this latter theory. There is dispute in the testimony, however, on the question of skid marks. At all events, whether present or absent, the question of skidding or being unable to stop because of an unexpectedly slippery condition, was one of fact for the jury. Defendant was not, therefore, entitled to a directed verdict on the ground of contributory negligence of decedent as a matter of law.

As for defendant's right to a directed verdict for lack of proof of its negligence, we think the proofs presented jury questions in that regard, particularly with respect to the kind of warning lights placed by defendant and the defendant's police officer's failure, 15 minutes before the accident, when he knew the flares were out, to brave the rain and do something to warn or safeguard oncoming traffic of the existing danger, and also, as relates to defendant's leaving dirt in the intersection, if it did, which might later become soupy and slippery in the rain. There was testimony of defendant's street superintendent that from previous experience they knew that bomb flares would go out in cases of wind or rainstorms. Its chief of police testified that its police cars were equipped with railroad fusees which might have been placed at the intersection when the policeman found the flares to be out. Defendant stresses the presence of street lights nearby the intersection, but its police officer testified that at the time and place of the

accident he could see ahead only 25 or 30 feet in the storm. At all events, decedent was entitled to assume the existence of a reasonably safe condition in the street ahead and that there would be ample warning of an unsafe condition, of the city's making, such as here existed. *Bonneville* v. *City of Alpena,* 158 Mich 279; *Karrer* v. *City of Detroit,* 142 Mich 331; *Joslyn* v. *City of Detroit,* 74 Mich 458; *Hall* v. *City of Flint,* 195 Mich 638. There was testimony of facts presenting questions for the jury as to defendant's negligence. It was not entitled to a directed verdict on that score.

Defendant claims error in the court's instructions entitling it to a new trial. The first is the court's language as follows:

"With respect to the violation of the provisions of a statute, such violation must have been the sole proximate cause of the accident before you can hold the defendant negligent or the plaintiff's decedent guilty of contributory negligence."

It being defendant's theory that decedent violated the assured clear distance ahead statute (CLS 1956, § 257.627 [Stat Ann 1952 Rev § 9.2327]), it complains that the quoted portion of the charge informed the jury that, if decedent violated that statute, that fact would not bar plaintiff's right to recover unless that violation was the sole proximate cause of the accident. The wording is unfortunate, but not prejudicial in view of the language 2 sentences later stating essentially the same proposition but that decedent's contributory negligence in violating the statute, to bar plaintiff's recovery, "must have been the sole *or* proximate cause of the accident". It is evident that the word "or" was inadvertently omitted by the judge, or possibly the court reporter, in the first sentence, but properly inserted 2 sentences later. The paragraph on that matter was concluded, in the

sentence following the last above mentioned, by this language:

"In other words, if the violation of the statute enacted for the public safety had no relationship to the accident at all, you can disregard it in such case or in this case."

This, together with other language in the set of instructions, convinces us that the jury was not misled into error in this connection.

Defendant next complains of the instruction with respect to a presumption of decedent's due care, in that, after instructing that that presumption disappears when there is evidence from which reasonable inferences may be drawn on the subject, the court went on to say that if the jury found such evidence to be "not credible, then the presumption is restored". Defendant then quotes from *Dalton* v. *Grand Trunk W. R. Co.,* 350 Mich 479, that it is the court's function to say whether facts have been established from which negligence *may* reasonably be inferred, and that it is for the jury to say whether it *ought* to be. Also, from *Lake Shore & M. S. R. Co.* v. *Miller,* 25 Mich 274, that the relevancy of evidence and whether there is any evidence tending to prove diligence is for the court and not the jury to determine. These questions, considered in *Dalton* and in *Lake Shore & M. S. R. Co.,* are not involved in this instruction. In effect, the court was charging simply that the credibility of witnesses is for the jury to decide. There is no error in such instruction.

Defendant complains of the court's reading to the jury sections of the statute* requiring vehicles parked upon a highway after dark to have certain lights displayed thereon. Defendant says the statutory provisions were not applicable because the bull-

* CLS 1956, §§ 257.694, 257.695 (Stat Ann 1952 Rev § 9.2394, Stat Ann 1960 Rev § 9.2395).

dozer in question was on a part of the street closed off to public travel. The court told the jury just exactly that. It might have been as well to make no reference to that statutory requirement, but at all events, defendant cannot complain inasmuch as the court told the jury that it did not apply here.

Next, defendant points to the court's instruction that "it was the duty of a municipality to see that that part of the highway [part not closed to traffic] was in a safe and fit condition to be traveled upon." The statute (CLS 1956, § 242.1 [Stat Ann 1958 Rev § 9.591]) requires that the street be kept *"reasonably* safe and fit for travel". Inclusion of the word "reasonably" in the judge's instruction would have caused it to conform strictly to the statute. Its omission was error. Under all of the facts in this case and proofs concerning defendant's negligence we do not believe that it was prejudicial, that the jury was misled or influenced thereby in reaching its decision, or that inclusion of the word would have caused a different verdict.

Citing *Baker* v. *Slack,* 319 Mich 703, *Judis* v. *Borg-Warner Corp.,* 339 Mich 313, and *Clinton* v. *Laning,* 61 Mich 355, as authority, defendant urges that plaintiff, as decedent's mother, would be entitled to recover as a dependent suffering actual pecuniary loss under the death act (CL 1948, § 691.581 *et seq.* [Stat Ann 1959 Cum Supp § 27.711 *et seq.*]) only if decedent had owed a legal duty to support her under the provisions of the penal statute, CL 1948, § 401.17 (Stat Ann 1960 Rev § 16.137). He then points out that the latter section applies only to "an adult resident of the State". Decedent was not a resident of this State. It seems natural enough that the legislature would not make the attempt at extraterritoriality of fixing a penalty for a nonresident for what he did, or failed to do, while residing in another State. That language cannot be deemed determina-

tive (and we did not so hold in the cited cases) of whether a nonresident has a duty to support his parent in Michigan even though neglect thereof is not made, by statute, punishable as for commission of a crime. See CL 1948 and CLS 1956, § 401.2 *et seq.* (Stat Ann 1953 Cum Supp and Stat Ann 1960 Rev § 16.122 *et seq.*), for liability of children of sufficient ability for support of their poor parents, regardless of the children's residence or nonresidence in this State. It was an obligation recognized and assumed by decedent. The record discloses that he continually had been contributing toward her support. The assumption of the obligation, even though voluntary and not compelled for whatever reason, was sufficient to place the mother in the class of next of kin suffering pecuniary loss recoverable under the death act. *Judis* v. *Borg-Warner Corp., supra,* and *Clinton* v. *Laning, supra.*

Was the verdict excessive? Plaintiff testified that money decedent had been giving her was her support, that he had given her as support money $725 from January 1, 1956, to his death on May 12th of that year, $1,500 in 1955 and $1,800 in 1954; that her husband had died in 1933, leaving her only insurance in the amount of $500; that decedent had been contributing to her support since 1944. Decedent had a life expectancy of 35 years and his mother about 10 years, according to the statutory mortality tables. She testified that her mother had lived to age 83 and her grandmother to age 90. Stipulated special damages for funeral expenses, et cetera, were somewhat under $2,000, leaving just over $20,000 for the mother's pecuniary loss. Under such record we cannot say that the verdict was excessive.

Affirmed. Costs to plaintiff.

CARR, KELLY, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.