BRECKON v. FRANKLIN FUEL COMPANY.

OPINION OF THE COURT.

1. DEATH—WRONGFUL DEATH—DAMAGES—LEGISLATIVE INTENT.

The legislative intent shown by simultaneous amendment of the wrongful death statute and the sections of the probate code governing damages for wrongful death was that *only* persons dependent partially or wholly on the decedent for support or expectable rendition of services, and otherwise qualified, should share in a recovery in a wrongful death action for pecuniary injury (CL 1948, §§ 691.581 *et seq.*, 702.114, 702.115).

2. STATUTES—CONSTRUCTION OF STATUTES—LEGISLATIVE INTENT.

Legislative will is the all-important factor in the interpretation of statutes, and the primary rule of construction of a statute is to ascertain and declare the intention of the legislature and carry such intention into effect to the fullest degree.

3. DEATH—WRONGFUL DEATH—STATUTES—PECUNIARY INJURY.

The terms "pecuniary injury" and "pecuniary loss" used in the wrongful death statute are not ambiguous and have never included those losses which result from the deprivation of society and companionship (CL 1948, § 691.581; MCLA § 600-.2922).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 9, 16, 18, 19, 28–30]   22 Am Jur 2d, Death § 47 *et seq.*
[2]   50 Am Jur, Statutes § 223.
[3, 12, 23]   22 Am Jur 2d, Death §§ 119–123.
[4, 10, 11, 14, 15, 24, 27]   22 Am Jur 2d, Death § 135.
[5, 6]   20 Am Jur 2d, Courts §§ 74, 190.
[7, 13]   20 Am Jur 2d, Courts § 183 *et seq.*
[8]   32 Am Jur 2d, Federal Employers' Liability and Compensation Acts § 77.
[17]   22 Am Jur 2d, Death § 1.
[20–22]   22 Am Jur 2d, Death § 12 *et seq.*
[25]   22 Am Jur 2d, Death § 267.
[26]   50 Am Jur, Statutes § 326.
[31]   22 Am Jur 2d, Death § 260 *et seq.*

4. DEATH—WRONGFUL DEATH—PECUNIARY INJURY—COMPANIONSHIP
—DICTA.

References by the Supreme Court to companionship, in con-
sidering pecuniary injury in an action for wrongful death
of a child, were *gratis dicta* in a case where the issue was
excessiveness of an otherwise valid verdict based upon proof
of pecuniary injury suffered by decedent's parents.

5. COURTS—OPINIONS—GENERAL EXPRESSIONS—PRECEDENTS.

General expressions in court opinions are to be taken in con-
nection with the case in which the expressions are used,
and if they go beyond that case, they may be respected but
ought not to control the judgment. in a subsequent action
when that very question is presented for decision.

6. COURTS—OPINIONS—DICTUM.

Dictum is an observation or a remark by a judge in pro-
nouncing an opinion upon a cause, concerning some rule,
principle, or application of law, which is not necessarily in-
volved in the case presented for determination.

7. COURTS—OPINIONS—STARE DECISIS—FACTUAL VARIANCE.

*Stare decisis* does not apply where, upon a reading of a prior
opinion as a whole, the facts are determined to be essentially
different, for a perfectly sound principle applied to one set
of facts might be entirely inappropriate when a factual
variance is introduced.

8. COURTS—PRECEDENTS—FEDERAL EMPLOYERS' LIABILITY ACT—
PECUNIARY INJURY—COMPANIONSHIP—DEPENDENTS.

Damages for "pecuniary injury" under the federal employers'
liability act exclude all damages for loss of companionship
and are awarded only to legal dependents of the decedent
and persons able to prove reasonable expectation of pecuniary
assistance of which they have been deprived (45 USC § 51).

9. DEATH — WRONGFUL DEATH — STATUTES — DAMAGES — PECU-
NIARY INJURY — DISTRIBUTION.

Statutes have allowed pecuniary damages recovered in a wrong-
ful death action to be distributed only to a surviving spouse
and next of kin who suffered pecuniary injury, since the 1939
amendment of the death act (MCLA § 600.2922).

10. DEATH — WRONGFUL DEATH — STATUTES — DAMAGES — PECU-
NIARY INJURY — COMPANIONSHIP — PRECEDENT.

The wrongful death statute never has included a requirement
that money recovered in a wrongful death action be divided

between dependent survivors and companionate survivors and no precedential decision, when properly understood, has authorized recovery and distribution of damages for loss of companionship to non-dependents as part of the pecuniary injury in a wrongful death action (MCLA § 600.2922).

11. DEATH — WRONGFUL DEATH — STATUTES — AMENDMENT — PECUNIARY INJURY — COMPANIONSHIP.

Amendment of the wrongful death statute and probate code to alter distribution of remainder of proceeds of wrongful death action was not intended to change the statutory measure of damages for pecuniary injury to permit damages for loss of the decedent's companionship (MCLA §§ 600.2922, 702.115; PA 1965, Nos 145, 181).

12. DEATH — WRONGFUL DEATH — STATUTES — PROBATE CODE — DAMAGES — PECUNIARY INJURY — COMPENSATION.

The purpose of the wrongful death statute and probate code as amended in 1939 was that only pecuniary injury as compensable under the death act before amendment plus compensation for conscious pain and suffering and reasonable medical, hospital, funeral and burial expenses are now compensable in a wrongful death action (MCLA § 600.2922, and § 702.1 *et seq.*, as amended by PA 1965, No 181, § 115).

13. COURTS—DECISIONS—PRECEDENTS—STARE DECISIS.

Decision by an equally divided court does not establish precedent to be followed under the doctrine of *stare decisis* and no point of law or precedent is established where a majority of the court reaches a decision but a majority of the court cannot agree on the reasoning for that decision.

14. DEATH—WRONGFUL DEATH—DAMAGES—COMPANIONSHIP.

Judgment of circuit court allowing recovery of damages including damages for loss of companionship in action for wrongful death of adult plaintiff's parents who died without dependents is reversed and remanded for a new trial.

SEPARATE OPINION.

T. G. KAVANAGH, J.

15. DEATH — WRONGFUL DEATH — PECUNIARY INJURY — COMPANIONSHIP.

*Loss of companionship is not a "pecuniary injury" or "pecuniary loss" within the meaning of the wrongful death statute.*

16. DEATH — WRONGFUL DEATH — DAMAGES — DISTRIBUTION — DEPENDENTS.

> *Nothing in the wrongful death act or the probate code as amended prevents distribution of damages for pecuniary injuries to dependent and nondependent next of kin according to their proof of "pecuniary loss" (MCLA § 702.115).*

DISSENTING OPINION.

T. M. KAVANAGH and ADAMS, JJ.

17. DEATH—WRONGFUL DEATH—COMMON LAW.

> *The common law provided no cause of action for wrongful death.*

18. DEATH — WRONGFUL DEATH — STATUTES — BENEFICIARIES — DESCENT AND DISTRIBUTION.

> *Before 1939, the original statute providing a cause of action for wrongful death did not treat the amount recovered as an asset of decedent's estate but was amended to make the recovery an asset to be distributed among the beneficiaries, not according to damage suffered but according to the proportion fixed by the statute of descent and distribution (PA 1848, No 38; PA 1873, No 94).*

19. DEATH — SURVIVAL ACT — STATUTES — ASSETS OF DECEDENT'S ESTATE — PERSONAL REPRESENTATIVE — WRONGFUL DEATH.

> *The survival act, before 1939, gave the personal representative of a decedent, by survival, a right of action for injuries suffered by the decedent before his death and the damages recovered became an asset of decedent's estate; it did not create a new cause of action but prevented lapsing of an old one (RS 1846, chap 101, § 5, as amended by PA 1885, No 113).*

20. DEATH — WRONGFUL DEATH — SURVIVAL ACT — REMEDIES — JOINDER.

> *The administrator of an estate, before 1939, might join a count for wrongful death with a count under the survival act so as to avoid the peril of pursuing the wrong remedy, but recovery under either count excluded recovery under the other (PA 1873, No 94; RS 1846, chap 101, § 5, as amended by PA 1885, No 113).*

21. DEATH—WRONGFUL DEATH—STATUTES—AMENDMENT.

> *Amendment of the wrongful death act in 1939 combined in one action the formerly distinct remedies for wrongful death and for injuries resulting in death for which the action had*

survived, eliminated common-law remedies, provided for recovery for specific expenses of the decedent's estate and pain and suffering of the decedent as well as the pecuniary loss to the surviving spouse and next of kin, and repealed the survival act to the extent it was inconsistent with the wrongful death act (PA 1939, No 297, §§ 1–3).

22. STATUTES—SURVIVAL ACT—WRONGFUL DEATH ACT—AMENDMENT.

Statutory survival of actions remained in force after amendment of the wrongful death act in 1939 whether the death was of the injured party or of the tortfeasor (PA 1939, No 297).

23. DEATH — WRONGFUL DEATH — RECOVERY — PECUNIARY LOSS — COMPANIONSHIP.

Recovery of losses for wrongful death is limited by statutes to pecuniary losses, the actual money value of life, which exclude sorrow and anguish but include food, clothing, shelter, and companionship (MCLA § 600.2922).

24. DEATH — WRONGFUL DEATH — EXCLUSIVE REMEDY—CONSORTIUM.

Action under the wrongful death act by a decedent's personal representative is the exclusive remedy where the decedent was killed by wrongful act and his wife does not have a separate cause of action for loss of consortium against the tortfeasor who killed her husband, as she would have if he were only injured (MCLA § 600.2922).

25. DEATH — WRONGFUL DEATH — PECUNIARY LOSS — JURY — INSTRUCTION TO JURY.

A jury in a wrongful death action is required to ascertain the pecuniary loss suffered because of the taking of a life by considering expenses and companionship and other relevant evidence, without instructions to add, subtract, or multiply.

26. STATUTES — CONSTRUCTION — LEGISLATIVE ACQUIESCENCE — REENACTMENT.

Where the basic provisions of a statute have been construed by the courts and these provisions are subsequently re-enacted, it may be assumed that the legislature acted with knowledge of the judicial construction and that it intended the re enacted statute to carry that construction with it.

27. DEATH — WRONGFUL DEATH — PECUNIARY LOSS — COMPANION-
SHIP — STATUTES — CONSTRUCTION.

*Construction of wrongful death statute by Supreme Court*
*allowing recovery for loss of society and companionship as*
*a pecuniary loss must be presumed to have been adopted*
*by the legislature when it re-enacted the statute without sub-*
*stantial change after the series of decisions developing that*
*construction (MCLA § 600.2922).*

28. DEATH — WRONGFUL DEATH — COMPANIONSHIP — DEPENDENTS
— STATUTES.

*Allowing damages for loss of companionship as a pecuniary*
*loss in an action for wrongful death does not conflict with*
*the provision in the probate code for distribution of the*
*proceeds to dependents of the decedent, because dependency*
*upon another person may arise out of companionship (MCLA*
*§ 600.2922; CL 1948, § 702.115).*

29. DEATH — WRONGFUL DEATH — DEPENDENCY — NEXT OF KIN —
QUESTION OF FACT.

*Dependency is to be determined by the facts and does not*
*necessarily exist between next of kin.*

30. DEATH — WRONGFUL DEATH — SPOUSE — NEXT OF KIN —
COMPANIONSHIP.

*Life has value not only to the person deprived of its enjoyment*
*by a wrongful act, but also to the spouse and next of kin*
*who have lost those benefits of association summarized as*
*companionship.*

31. DEATH — WRONGFUL DEATH — DAMAGES — QUESTION OF LAW.

· *A jury may assess damages for pain and suffering of decedent*
*while he was alive, but where a decedent was instantaneously*
*killed by wrongful act and the expenses of decedent's estate*
*are stipulated, there is no question for a jury to consider,*
*where the next of kin of decedent only claim pecuniary loss*
*because of loss of companionship, if the measure of dam-*
*ages adopted by the Supreme Court in wrongful death actions*
*excludes companionship as a compensable pecuniary loss.*

Appeal from Kent, Roman Snow, J., and from
Court of Appeals prior to decision. Submitted
October 7, 1969. (Calendar No. 3, Docket No. 52,-
080.) Decided March 12, 1970.

Complaint by Judith M. Breckon, administratrix of the estates of Herman E. Anderson, deceased, and Thora M. Anderson, deceased, against Franklin Fuel Company, a Michigan corporation, and Eddie Grover, for wrongful death. Judgment for plaintiff. Defendants appealed to the Court of Appeals and petitioned Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Reversed, and new trial ordered.

*Warner, Norcross & Judd (Harold S. Sawyer* and *George L. Whitfield,* of counsel), for plaintiff.

*Cholette, Perkins & Buchanan (Grant J. Gruel,* of counsel), for defendants.

BLACK, J. Upon application of the defendants for bypass of the Court of Appeals, the six participating Justices resolved unanimously August 15, 1968 to reconsider *Wycko* v. *Gnodtke* (1960), 361 Mich 331, and review in that light the instant cause for wrongful death. The need for such action became crescently apparent as the Court divided equally in *Burns* v. *Van Laan* (1962), 367 Mich 485, 497, and thereafter divided when the wrongful death actions shown by *Currie* v. *Fiting* (1965), 375 Mich 440; *Heider* v. *Michigan Sugar Company* (1965), 375 Mich 490; *Reisig* v. *Klusendorf* (1965), 375 Mich 519; *Wilson* v. *Modern Mobile Homes, Inc.* (1965), 376 Mich 342; and *Mosier* v. *Carney* (1965), 376 Mich 532, came one after the other to doubtful precedent.

*Wycko* presented a typical question of application to specific facts of interrelated and unambiguous sections of legislation providing the right of action for wrongful death, the specific measure of damages recoverable for such death, and a specially distinctive method of distribution of the damages thus

recovered. It arrives again with the foregone conclusion that what we now write and decide will receive more than passing study by the courts of other States, wherein statutes providing the right of action for wrongful death limit recovery on behalf of statutorily defined survivors to damages for the *pecuniary* loss suffered by such survivors. In these circumstances we have decided to append below, for convenient interstate comparison with the pertinent statutes of such other States, the title and respective sections of our wrongful death statute, and the sections of our probate code which provided for the distribution of damages recovered for wrongful death, *as that title and those sections stood when the causes of action pleaded in Wycko through Mosier arose.* Legislative amendments of these statutory provisions, made in 1965 will come to consideration in another division of this opinion, *post.*

The title and complete text of Michigan's wrongful death statute, as amended by PA 1939, No 297, effective September 29, 1939, read as follows:

"An act requiring compensation for causing death and injuries resulting in death by wrongful act, neglect or default; to prescribe the measure of damages recoverable and the distribution thereof; and to repeal inconsistent acts.

"Sec. 1. Be it enacted by the senate and house of representatives of the state of Michigan, whenever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death

shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act.

"Sec. 2. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death: Provided, however, That such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the total pecuniary loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person, as shown by the evidence introduced upon the trial of such case. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine

as provided by law the manner in which the amount representing the total pecuniary loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and next of kin. The remainder of the proceeds of such judgment shall be distributed according to the intestate laws.

"Sec. 3. Insofar as the provisions thereof are inconsistent with the provisions of Act No. 38 of the Public Acts of 1848 as amended by this act, section 32 of chapter 12 of Act No. 314 of the Public Acts of 1915, being section 14040 of the Compiled Laws of 1929 is hereby repealed." (CL 1948, § 691.581 *et seq.*)

Related sections 114 and 115 of the Michigan probate code of 1939, effective on the same date, appeared in the code under heading "Settlement of Death and Survival Actions—Distribution of Proceeds." Said sections 114 and 115 read as follows:

"Sec. 114. When, for the purpose of settling any claim or any final judgment rendered for damages for wrongful death or existing under the laws of this state relating to the survival of actions, the probate court is petitioned in writing by an executor or administrator asking leave to settle such claim, the court may, with or without notice, conduct a hearing and approve or reject such settlement.

"Sec. 115. The proceeds of any settlement of a cause of action for wrongful death, or the proceeds of a judgment recovered in an action for damages for wrongful death, shall be distributed in such manner, to such persons, and in such amounts as hereinafter set forth:

(1) The executor or administrator shall file with the probate court his petition for authority to distribute such proceeds; and upon the filing of such petition the court shall set a date for hearing thereon, which hearing may be held at the time of the hear-

ing on the executor's or administrator's final account.

(2) Notice of such hearing shall be given to all persons entitled to inherit the intestate personal property of the decedent according to law, either by personal service or service by registered mail as provided in sections 32 to 35 of chapter 1 of this act, as the court may by its order direct: Provided, That any legally competent person may waive notice of such service in the manner provided in section 34 of chapter 1 of this act.

(3) If any of the persons entitled to inherit the personal property of the decedent as aforesaid shall be a minor or an incompetent for whom no guardian is acting, a guardian or guardian ad litem shall be first appointed and notice as provided in subsection 2 above shall be given to the guardian or guardian ad litem of such minor or incompetent.

(4) After hearing on the petition of the executor or administrator, the probate court shall enter an order distributing such proceeds only to those persons who were dependents of the decedent and in such amounts as to said court shall seem fair and equitable considering the relative damages sustained by each of such dependents by reason of the decedent's wrongful death: Provided, however, That if the proceeds which are to be distributed are proceeds of a judgment recovered in a court which has issued a certificate, as may be provided by law, relative to the damages sustained by each of such dependents, distribution of such proceeds shall, in the absence of written objections thereto filed by any interested party following service of notice as required by this section, be ordered in accordance with such certificate.

"The provisions of this section shall not apply to cases arising under the laws of this state relating to the survival of actions.

(5) In case none of the persons entitled to inherit the intestate personal property of the decedent is

either a minor or an incompetent and all of such persons shall execute a stipulation or agreement in writing and acknowledged, as provided in section 34, chapter 1 of this act, in which is specified the portion of such proceeds to be distributed to each of such persons, the order of the probate court shall be entered in accordance with such stipulation or agreement.

(6) In the discretion of the probate court, provision may be made in its order for the payment of the funeral expenses of the decedent, but such proceeds shall not be liable for the payment of any other charges against the estate of the decedent." (CL 1948, §§ 702.114, 702.115).

It is not difficult to perceive why *all* of these statutory sections were tied together and referred to back and forth by the legislature; why all were enacted in unison on the same day, May 25, 1939, and why they were approved by the Governor as one on June 13, 1939. One section could not function without the rest. All were made unitary for that reason. Coordinated together, these enactments of 1939[1] responded promptly to this Court's not-exactly-veiled suggestion, made a bare six months before (*In Re Venneman's Estate,* released Nov. 10, 1938, 286 Mich 368, 376, 377), that Michigan's then wrongful death statute should be amended so that no *non-dependent* be permitted to take from a *dependent* of the deceased any part of the amount recovered by suit or settlement for *"pecuniary* injury."

The indicative thrust of the unanimous opinion of *Venneman,* and of the legislature's follow-through by the quoted legislation of 1939, was to make sure that otherwise eligible survivors of the decedent should receive a share or shares of the statutory amount recovered for pecuniary injury *only* if shown

---

[1] Probate code, PA 1939, No 288 and amendment both of title and body of wrongful death act, PA 1939, No 297.

to be partially or wholly dependent upon the decedent for support or expectable rendition of services. We said as much when *MacDonald* v. *Quimby* (1957), 350 Mich 21, was decided. There the widow-administratrix sought, without success, to exclude the decedent's dependent mother as a beneficiary of the statutory right of action. See our respective references to *Venneman* in *MacDonald,* pp 30-34.

## I.

### *The Wycko Case*

Today's threshold question is whether *Wycko* is a precedent for holding other—or more—than that a verdict in the sum of $14,000, for what all agreed was pecuniary loss suffered by the surviving parents of a wrongfully taken 14-year-old boy like John L. Wycko, is *not* excessive. We say *Wycko* is not and never became such a precedent.

The next question is whether, as debated in *Currie* and then in *Reisig* (with the Court in each instance writing separately in groups of 4, 2, 1 and 1), *Wycko* should be restricted to what was substance distinguished from matter *obiter* appearing in *Wycko's* opinion for reversal. Our answer is affirmative.

We acknowledge that these questions should be settled with judicial promptness. The right of action for recovery of damages for pecuniary injury (or "pecuniary loss" as our statute uses the two terms interchangeably) is employed steadily in all Michigan circuits. We are not so obtuse as not to know that many wrongful death actions remain pending, the result of which will turn upon our decision to revisit the *Wycko* case, and it requires no resort to the prerogative of judicial notice to say that traffic carnage probably calls Michigan's wrongful death

statute into civil play more than any other one of her legislative enactments.

As for the facts at bar, they are legal duplicates of those which, in *Currie* v. *Fiting* (1965), 375 Mich 440, resulted in a substantial judgment for the administrator of the estate of Linda Kay Hopkins, deceased, against a defendant wrongdoer he had sued under our quoted wrongful death statute.

Linda Kay Hopkins at the time of fatal injury was an unmarried adult. No one, by open admission of the plaintiff fiduciary's counsel, was dependent upon her or otherwise shown as having been legally expectant of receiving pecuniary aid from her, had she continued to live.[2] Here likewise the decedent father and mother, represented in this wrongful death action by their married adult daughter-fiduciary, left no kin dependent upon either of them or similarly expectant of receiving pecuniary aid from them, had they continued to live. The case before us is, therefore, a factually pertinent twin of *Gulf, Colorado & Santa Fe R. Co.* v. *McGinnis* (presently cited and quoted). There the trial judge erroneously included, in his instructions to the jury, a husband-supported married daughter of the decedent as one entitled to pecuniary damages. All of which brings to the fore that judicial obligation which arises when one party to litigation demands that the Court apply a controlling statute one way and his adversary insists that it should be applied precisely the other way.

50 Am Jur, Statutes, § 223, pp 200–203, speaks tersely the duty called into play here:

"§ 223. *Legislative Intent as Controlling Factor.* —In the interpretation of statutes, the legislative

---

[2] As in *Richardson* v. *Detroit & Mackinac R. Co.* (1913), 176 Mich 413, *Rytkonen* v. *City of Wakefield* (1961), 364 Mich 86 and *Mooney* v. *Hill* (1962), 367 Mich 138.

will is the all important or controlling factor. Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law. *The legislative intent has been designated the vital part, heart, soul, and essence of the law, and the guiding star in the interpretation thereof.* Accordingly, the primary rule of construction of statutes is to ascertain and declare the intention of the legislature, and carry such intention into effect to the fullest degree. A construction adopted should not be such as to nullify, destroy, or defeat the intention of the legislature."[3]    (Emphasis by present writer.)

The present importance of the rule just quoted lies in the fact that every opinion of *Wycko, Burns, Currie, Heider, Reisig* and *Wilson* may be searched in vain for *any* judicial intimation that "pecuniary injury" or "pecuniary loss" were ambiguous terms, or that *any* assembly of the legislature, whether it be of the one of 1848, or of 1873, or of 1939, intended by either phrase to provide a damage measure for loss of the decedent's companionship, or any definition of pecuniary injury excepting that which became known in our books, and in the reports of the United States Supreme Court, many years ago. As said of the word "pecuniary," in *Tilley* v. *Hudson River R. Co.* (1862), 24 NY 471 and (1864), 29 NY 252 (quoted and followed in *Michigan Central R. Co.* v. *Vreeland* [1912], 227 US 59, 71 [33 S Ct 392, 57 L Ed 456]), "It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of damages."

The fact is that all references in the prevailing opinion of *Wycko,* to the value of human life, to the

---

[3] This rule is no stranger to the jurisprudence of Michigan. From *Whipple* v. *Judge of Saginaw Circuit* (1873), 26 Mich 342, 345 (*per* CHRISTIANCY, C. J.), through *City of Lansing* v. *Township of Lansing* (1959), 356 Mich 641, 648 (*per* T. M. KAVANAGH, J.), this Court has steadily adhered to it.

"value of mutual society and protection, in a word, companionship," etc., were *gratis dicta* serving only to highlight that which really had been placed in issue, namely, the question of excessiveness of an otherwise valid verdict which all eight Justices conceded was based upon clear proof of some *pecuniary injury* suffered by the parents of John L. Wycko. Had it been otherwise, we may be sure that Justice TALBOT SMITH, writer of the prevailing opinion, would have questioned "pecuniary injury" and "pecuniary loss" for ambiguity *and then would have gone about deciding that question by the standard of legislative intent.*

In *Humphrey's Executor* v. *United States (Rathbun* v. *United States)* (1935), 295 US 602 (55 S Ct 869, 79 L Ed 1611), the Supreme Court was asked to apply, to a question of alleged unconstitutionality of a Congressionally enacted provision, certain *dicta* which had been written into the majority opinion of *Myers* v. *United States* (1926), 272 US 52 (47 S Ct 21, 71 L Ed 160). Having referred to the pages in *Myers* v. *United States* which consisted of "historical, legislative and judicial data bearing upon the question," (pages which correspond with our demonstrative journey, in *Wycko,* through the English and American history of child labor), the Court in *Rathbun* affirmed again that judicial expressions *going beyond the point involved* "do not come within the rule of stare decisis." The Court proceeded (pp 626, 627):

"A like situation was presented in the case of *Cohen* v. *Virginia* (1821), 6 Wheat 264, 399 (5 L Ed 257, 290), in respect of certain general expressions in the opinion in *Marbury* v. *Madison* (1803), 1 Cranch, 137 (2 L Ed 60). Chief Justice MARSHALL, who delivered the opinion in the *Marbury* case, speaking again for the court in the *Cohen* case, said:

" 'It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.  If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.  The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent.  Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' "[4]

It is not difficult to recall the presentations of counsel and the specific issues that were brought up for review of *Wycko*.  The first issue (alleged excessiveness of verdict) was primary and decisive of Wycko's appeal.  The second was submitted as supportive of the first.  Each proves that counsel for the plaintiff Wycko had no intention, either by request to charge in circuit, or by brief and argument in this Court, to raise and save any contention that our wrongful death statute authorized recovery for loss by surviving parents of a minor decedent's companionship, distinguished from the claimed right to recover "the parents' investment" in the child between birth and death.

*Wycko's* primary issue was whether the trial judge had rightfully coerced reduction of the jury's verdict, *for pecuniary injury established by the proof,* from $14,000 to $7,500.  The supportive issue was *not* that this Court should, for the purpose of bolstering the verdict, enact a new rule authorizing recovery of damages for loss of companionship.  No

[4] This is the standard by which we identify *obiter dicta*.  See *Larzelere* v. *Starkweather* (1878), 38 Mich 96, 101 (opinion endorsed by Justices COOLEY, CAMPBELL, MARSTON and GRAVES), and cases collected in *McNally* v. *Board of Canvassers of Wayne County* (1947), 316 Mich 551, 558.

counsel argued any such point, or attempted to cite authority for it. What plaintiff's counsel in *Wycko* exclusively asked for, in the trial court and then in this Court, was approval of a request to charge, the specific essence of which read as follows:

"One who injures another by his negligent act must, under our laws, respond in damages for that injury and the only way that damages can be ordered in our society is in terms of money retribution. Life cannot be restored but this is not to say that life has no value and a mortal jury must not shrink from the assessment of that value. You therefore are to consider the investment of these parents and the dollar and cents cost of the replacement of that investment in their son to the time of his death as the measure of their pecuniary loss."

The request having been denied and the reviewable question having been raised in that manner, counsel for plaintiff Wycko stated the questions on appeal this way in his brief:

"I. Is a jury verdict of $14,979.50 an excessive assessment of the pecuniary loss suffered by parents because of the death of their fourteen year old son, the result of defendant's wrongful act, the funeral expenses being $979.50?
The trial court answered that it was and ordered a remittitur of all monies in excess of $8479.50 failing the acceptance of which by the plaintiff the court decreed a new trial.
The appellant says 'No.'

"II. Should the measure of damages for the pecuniary loss of the parent as presently defined and limited to the worth of decedent's minor's services from time of wrongful death to age of 21 less reasonable cost of maintenance of board and room be supplanted by a new, more modern rule of damages premised on the replacement of the parents' investment in the

deceased minor son from date of birth until date of death?
The court answered 'No.'
Appellant contends it should be answered 'Yes.' "

We behold here the substance distinguished from the dixits of *Wycko.*

With citation of respected authority Black's Law Dictionary (4th ed, West Publishing Co.) defines *dictum:*

"The word is generally used as an abbreviated form of *obiter dictum,* 'a remark by the way;' that is, an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination; any statement of the law enunciated by the court merely by way of illustration, argument, analogy, or suggestion."   (p 541.)

20 Am Jur 2d, Courts, § 191, pp 527, 528 declares likewise:

"§ 191.  *Identity of Questions.*
"A prior decision on a legal point has stare decisis effect in a subsequent case only if the same, or substantially the same, question is involved in the later case.  To determine whether the questions are identical or substantially so, the alleged precedent must be considered in the light of the facts and issues existing in the prior case as determined from a reading of the prior opinion as a whole.  *Where the facts are essentially different, stare decisis does not apply, for a perfectly sound principle as applied to one set of facts might be entirely inappropriate when a factual variance is introduced."*   (Emphasis supplied by present writer.)

Cardozo, having considered at length the need for extracting "from the precedents the underlying

principle," went on to say that "Judges differ greatly in their reverence for the illustrations and comments and side-remarks of their predecessors, to make no mention of their own." Then he proceeded with his always helpful advices:

"I own that it is a good deal of a mystery to me how judges, of all persons in the world, should put their faith in *dicta*. A brief experience on the bench was enough to reveal to me all sorts of cracks and crevices and loopholes in my own opinions when picked up a few months after delivery, and reread with due contrition. The persuasion that one's own infallibility is a myth leads by easy stages and with somewhat greater satisfaction to a refusal to ascribe infallibility to others. But dicta are not always ticketed as such, and one does not recognize them always at a glance. There is the constant need, as every law student knows, to separate the accidental and the non-essential from the essential and inherent." (The Nature of the Judicial Process, pp 29, 30.)

In view of the Michigan authorities, considered as they already have been with our unitary wrongful death and distribution statutes of 1939 (see *Currie* at 460–475), it is hardly necessary to prove again that pecuniary injury in law means what it says. However, since the application to presented facts of the positive term "pecuniary" continues under the federal employers' liability act in all courts of the land, we may look cumulant to the judicial situation in that area. Doing so, we find that the Supreme Court has not deviated to this day from the proposition that damages for pecuniary injury exclude all thought of damages for loss of companionship, and that the ordered purpose of that thoroughly-grounded legislative and judicial term *is to make sure that the net proceeds recovered by its employment in court go only to legal dependents of the decedent*

*and such others as are able to prove some reasonable
expectation of pecuniary assistance of which they
have been deprived.* By identification and elimination of all of *Wycko's* unnecessary dicta, such now
is our firm purpose.

In 1913 the Supreme Court decided three wrongful
death cases. Each arose under sections 1 and 2 of
the employers' liability act of 1908, cited now as 45
USC § 51. The cases are *Michigan Central R. Co.
v. Vreeland* (1913), 227 US 59 (33 S Ct 192, 57 L Ed
417); *American R. Co. of Porto Rico v. Didricksen*
(1913), 227 US 145 (33 S Ct 224, 57 L Ed 456), and
*Gulf, Colorado and Santa Fe R. Co. v. McGinnis*
(1913), 228 US 173 (33 S Ct 426, 57 L Ed 785).[5]
*Didricksen* and *McGinnis* followed *Vreeland* specifically so far as concerns today's question.

In the *Didricksen* case it was conceded that the
deceased employee's parents were the sole beneficiaries of the statutory right of action. The error
of the trial judge, in instructing the jury, will be
seen upon consideration of the following portion of
the court's opinion (pp 149, 150):

"The damages recoverable are limited to such loss
as results to them because they have been deprived
of a reasonable expectation of pecuniary benefits by
the wrongful death of the injured employe. The
damage is limited strictly to the financial loss thus
sustained. The court below went beyond this limitation by charging the jury that they might, in estimating the damages, 'take into consideration the
fact that they are the father and mother of the
deceased and the fact that they are deprived of his
society and any care and consideration he might
take of them, or have for them during his life.'

"The loss of the society or companionship of a
son is a deprivation not to be measured by any

[5] See quotation of the *Vreeland* case in *Burns, supra,* at 489, 490,
and in *Currie, supra* at 467.

money standard. *It is not a pecuniary loss under
such a statute as this."* (Emphasis by present
writer.)

As said previously (ante at 271) the third case
(*McGinnis*) is much like the case at bar. There the
surviving married daughter, Mrs. Saunders, was
in the same legal position as the presently married
daughters, Mrs. Breckon and Mrs. Walker, find
themselves. In *McGinnis* the Supreme Court ruled
(pp 175, 176):

"The Court of Civil Appeals upheld this ruling,
saying that 'the Federal statute expressly authorizes
the suit to be brought by the personal representative
for the benefit of the surviving wife and children
of the deceased, irrespective of whether they were
dependent upon him, or had the right to expect any
pecuniary assistance from him.' This construction
of the character of the statutory liability imposed
by the act of Congress was erroneous. In a series
of cases lately decided by this court, the act in this
aspect has been construed as intended only to com-
pensate the surviving relatives of such a deceased
employe for the actual pecuniary loss resulting to
the particular person or persons for whose benefit
an action is given. The recovery must therefore be
limited to compensating those relatives for whose
benefit the administrator sues as are shown to have
sustained some pecuniary loss. *Michigan Central
R. Co. v. Vreeland,* 227 US 59 (33 S Ct 192, 57 L Ed
417); *American R. Co. of Porto Rico v. Didricksen,*
227 US 145 (33 S Ct 224, 57 L Ed 456). In the last
cited case, speaking of the Employers' Liability Act,
we said (p 149):

" 'The cause of action which was created in behalf
of the injured employe did not survive his death,
nor pass to his representatives. But the act, in case
of the death of such an employe from his injury,
creates a new and distinct right of action for the
benefit of the dependent relatives named in the

statute.  The damages recoverable are limited to
such loss as results to them because they have been
deprived of a reasonable expectation of pecuniary
benefits by the wrongful death of the injured em-
ploye.  The damage is limited strictly to the financial
loss thus sustained.' "

Then, in 1946, the Supreme Court decided *Poff*
v. *Pennsylvania R. Co.,* 327 US 399 (66 S Ct 603,
90 L Ed 749, 162 ALR 700, 702), an action for wrong-
ful death arising under the same statute.  The dece-
dent left no kin save two sisters and a nephew, none
being dependent upon him, and a cousin who was a
member of his household "and wholly dependent on
him for support."  The Court of Appeals decided
that the cousin was barred as a beneficiary.  The
Supreme Court reversed, holding that "The em-
phasis on dependency suggests that Congress grant-
ed the right of recovery to such next of kin as were
dependent on the deceased."  (p 401.)

That is what we do now; declare *"pecuniary"*
*emphasis on dependency in the application of these*
*unitary statutes.*[6]  Until the legislature enacts other-
wise, the undersigned refuse to draw from these
1939 and 1965 statutes any inference that the body
purposed the fostering of personal or litigatory
competition, of dependents arrayed against non-
dependents of the decedent, for whatever amount
his representative has been able to recover as and
for "pecuniary injury" or "pecuniary loss."  Since
1939 our statutes have allowed "pecuniary" damages
only for distribution to the "surviving spouse and
next of kin who suffered such pecuniary injury."
They bar all return to contests as in *Venneman,*
where an adult non-dependent son of a previous

---

[6] See *e.g.* in addition to *Poff, Venneman, MacDonald, Vreeland,*
*Didricksen* and *McGinnis,* all *supra,* and the list of out-of-state
authorities which *Venneman* applied at 373–378.

marriage took $2,000 of the $4,000 awarded the dependent widow.

It will not do to say that competition between dependents and non-dependents rarely arises, or that the amount recovered will be enough to satisfy the needs of the decedent's dependents and the demands of the decedent's non-dependent companions, or that the presence or absence of a dependent or dependents of the decedent "is not before us in this case and we decline to pass upon it at this time." (ADAMS, J., writing for *Currie, supra* at p 453.) Many a cause for wrongful death has resulted, and many more will result, in short or compromise verdicts. Many like causes have resulted, and even more will result, in judicially-approved settlements for amounts too small for the satisfaction of all such needs and demands; liability being in doubt.

We conclude that no good reason has been shown for reading into our past or present wrongful death statutes any requirement that trial judges should divide recovered dollars between dependent survivors and companionate survivors; most certainly while that precise qualifier "pecuniary" remains in the specific statutory provision upon which all believers in damages for loss of companionship rely.

Rhetoric questions aptly characterize the limited posture of *Wycko*. Why and what for, starting in 1848 and continuing to 1939, did the legislature insert that adjective "pecuniary," before the noun "injury"? Why, starting in 1939 and continuing until now, did the legislature qualify both "injury" and "loss," with "pecuniary," four times by former § 691.582 (CL 1948) and four times again in 1965, by PA 146? May we say now, what we didn't say in *Wycko*, that "pecuniary" doesn't mean anything, any more, when it appears before "injury" or "loss" in a wrongful death statute such as ours? Why

indeed should the fact of dependency be the controller and distributor of pecuniary recovery when FELA wrongful death actions are tried in our courts, and not be the corresponding controller and distributor when the action is brought under our unitary acts? What, then, of *Wycko?*

It is and has been known that the narrowly prevailing opinion of *Wycko, dicta* and all, has been taken and is being taken by some lawyers and judges as our precedential word that damages for loss of companionship, no matter the dependent or nondependent status of the decedent's "surviving spouse and next of kin who suffered such pecuniary injury," are recoverable under the wrongful death act and distributable as and for such "pecuniary injury." That manifest error is the reason 5 members of this Court, one after the other or in pairs, have during the interval recorded their view that *Wycko* should be re-examined.[7] The inevitable sequel of those recordings was our mentioned order granting the application of these defendants for by-pass of the Court of Appeals.

We hold that *Wycko* never did authorize recovery of death act damages over and above compensation for "pecuniary injury" or "pecuniary loss," aside of course from the statutorily provided recovery for conscious pain and suffering, if any, and "damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable." Accordingly, and with *Wycko* thus shorn of all *dicta* appearing therein (just as was done by *Rathbun, supra,* with respect to *Myers, supra*), we commend to the profession the rules appearing both in the *Vreeland* case and in our decisions of *Staal* v. *Grand Rapids & I. R. Co.* (1885), 57 Mich 239;

[7] See all of the separate opinions of *Currie, Reisig* and *Wilson, supra.*

*Mynning* v. *Detroit, L. & N. R. Co.* (1886), 59 Mich 257; *Van Brunt* v. *Cincinnati, J. & M. R. Co.* (1889), 78 Mich 530; *Nelson* v. *Lake Shore & M. S. R. Co.* (1895), 104 Mich 582; *Ormsbee* v. *Grand Trunk R. Co.* (1917), 197 Mich 576 and *Baker* v. *Slack* (1948), 319 Mich 703.

## II.

### *The Legislative Amendments of 1965*

In 1965, by PA No 146, effective July 12, the legislature amended former § 2 of the wrongful death act (quoted ante at 258), only in respect to the concluding sentence of that section.[8] The former concluding sentence read:

"The remainder of the proceeds of such judgment shall be distributed according to the intestate laws."

By the 1965 amendment that sentence now reads:

"The remainder of the proceeds of such judgment shall be assets of the estate of the deceased."[9]

Then, by PA 1965, No 181, effective July 15, paragraph (4) of § 115 of the probate code of 1939 was amended so that same now reads:

"(4) After hearing on the petition of the executor or administrator, the probate court shall enter an order distributing such proceeds only to those persons specifically designated in subsection (2) of section 2922 of Act No 236 of the Public Acts of 1961, as entitled to recover them and in such amounts as to said court shall seem fair and equitable considering the relative damages sustained by each of such persons by reason of the decedent's wrongful death.

---

[8] The preposition "in" also was left out of the second line of § 2, presumably for style.

[9] See MCLA § 600.2922 (Stat Ann 1969 Cum Supp § 27A.2922).— REPORTER.

If the proceeds which are to be distributed are proceeds of a judgment recovered in a court which has issued a certificate, as may be provided by law, relative to the damages sustained by each of such persons, distribution of such proceeds shall, in the absence of written objections thereto filed by any interested party following service of notice as required by this section, be ordered in accordance with such certificate."[10]

As was true of PA 1939, Nos 288 and 297, PA 1965, Nos 146 and 181 are unitary. They must as before be regarded as one, for due application to rights of action for wrongful death and the rights of distributees arising thereunder.

The causes of action pleaded at bar having arisen after the effective dates of the 1965 amendments, it is claimed that the legislature intended thereby to change the statutory measure so that, in addition to damages for "pecuniary injury" or "pecuniary loss," damages for loss of the decedent's companionship may also be recovered under § 2 and distributed under (4) above.

We do not so find. The legislature has changed in no degree or manner the damage measure of 1939, that is, the measure allowed for "pecuniary injury" or "pecuniary loss." As noted previously, that restrainer "pecuniary" still appears four times in the statute. In short, we decline to attribute to the legislature any intent, by the amendments of 1965, to authorize the recovery and distribution of damages, on behalf of eligible survivors of the decedent, other than such as have always been designated by the legislature as "pecuniary." The present purpose of our wrongful death statute and of quoted counterpart (4) thereof remains as originally intended and

---

[10] MCLA § 702.115 (Stat Ann 1969 Cum Supp § 27.3178[185]).—REPORTER.

exemplified in all of our reports preceding *Wycko,*
then most recent *Baker* v. *Slack, supra,* definitely
included.   In that case Justice DETHMERS wrote for
a unanimous Court.   Having analyzed and quoted
*In re Olney's Estate* (1944), 309 Mich 65, his opinion
concludes today's issue this way (p 711):

"It is difficult to imagine how this Court could
have stated more explicitly that after the effective
date of the 1939 act recovery may be had, even when
the injured party survives his injuries for a time,
only for pecuniary injury, as formerly compensable
under the death act, plus compensation for conscious
pain and suffering, when it exists, and for reason-
able medical, hospital, funeral and burial expenses,
all as expressly provided in the 1939 act."

Having ruled that *Wycko* made no precedent for
recovery and distribution—under the acts of 1939—
of damages for loss of companionship, there remains
only the technical question whether *Currie, Reisig,*
or *Wilson,* one or all, made such a precedent.   The
answer is "No."   Each of these cases mustered the
unconditional endorsement, of reasoning toward and
support of such a precedent, of four Justices only
of this then eight-man Court.[11]   That wasn't enough,
most certainly when a fifth member of the Court
(Justice O'HARA), writing separately as he did in
*Currie, Reisig* and *Wilson,* made clear in *Wilson*
(p 355) that he with three others stood for recon-
sideration of *Wycko.*

The applicable rule appears in 20 Am Jur 2d,
Courts, § 195, pp 530, 531:

"A decision by an equally-divided court does not
establish a precedent required to be followed under

[11] Two of the four have departed since.

the stare decisis doctrine. And where the members of the court unanimously or by majority vote reach a decision but cannot, even by a majority, agree on the reasoning therefor, no point of law is established by the decision and it cannot be a precedent covered by the stare decisis rule."

Such is our rule. See *City of Kalamazoo* v. *Crawford* (1908), 154 Mich 58, where the 4–3 determination of *Stevens* v. *City of Port Huron* (1907), 149 Mich 536 was alleged to be a controlling precedent. Syllabus No 1 covers the point, supported by citations appearing at page 60. The syllabus reads:

"A judgment of this court, based on diverse views of the law held by the justices, who do not concur in the reasons and principles upon which it should be founded, is not binding as a precedent."

Judgment reversed. New trial ordered. No costs.

T. E. BRENNAN, C. J., and DETHMERS and KELLY, JJ., concurred with BLACK, J. T. G. KAVANAGH, J., concurred in the result.

T. G. KAVANAGH, J. (*concurring in reversal*). I agree with Justice BLACK that loss of companionship is not a "pecuniary injury" or "pecuniary loss", and for that reason I concur in reversal for I perceive this to be the only issue necessary to decision in this case.

A fair reading of the rest of his opinion however leads to the conclusion that he would hold compensation for "pecuniary injuries" is recoverable only by dependents.

Nothing in the death act or the probate code (as it stands since amendment in 1965, MCLA § 702.115 (Stat Ann 1969 Cum Supp § 27.3178[185]) persuades me that compensation for pecuniary injuries may not be recovered and distributed to dependent and non-dependent next of kin according to their proof of "pecuniary loss".

ADAMS, J. (*for affirmance*).

## I. *The Facts*

This appeal, by-passing the Court of Appeals, challenges the holding of this Court since 1960 that loss of companionship is a pecuniary loss for which damages may be awarded under the provisions of Michigan's wrongful death act.

Plaintiff, administrator of the estates of her deceased father and mother, brought this action against defendant Fuel Company and its truck driver for negligence in driving a truck that collided with decedents' automobile. The mother died at the scene of the accident and the father 42 hours later.

Prior to trial, defendants admitted liability, leaving for jury determination only the issue of the amount of damages to be awarded. The father, at death, was 58; the mother, 55. Decedents were survived by two daughters: plaintiff, Judith Breckon, married and mother of two children, and Sally Walker, married and mother of two children. Prior to their death, decedents were residents of Kent County, as were Mr. and Mrs. Breckon. The Walkers lived in Lansing. Mrs. Breckon and decedents experienced a close family relationship, customarily seeing each other twice a week and usually for Sunday dinner. They went camping and canoeing together, played cards, and often spent holidays to-

gether. The Walkers visited decedents once or twice a month and on holidays.

More facts could be detailed. Suffice it to say that the family relationship was close with many inter-family activities. It was stipulated that expenses aggregating $1120 were incurred by the estate of the mother. Evidence before the jury showed expense by the estate of the father totalling $2550. The jury returned a verdict for $20,000 to the father's estate and $15,000 to the mother's.

## II. *The Law*

### (a) *Wrongful Death—Whose Injury?*

At the common law, there was no cause of action for wrongful death. *Hyatt* v. *Adams* (1867), 16 Mich 180.

Lord Campbell's Act and its statutory counterpart in Michigan undertook to provide a remedy. The original Michigan act in 1848 did not treat the amount recovered as damages as an asset of the decedent's estate. It said, "the amount recovered in every such action, shall be for the *exclusive* benefit of the widow and next of kin of such deceased person and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property, left by persons dying intestate." (Emphasis supplied.) PA 1848, No 38. In 1873, by Act No 94, the foregoing provision was amended to read, "the amount recovered in every such action, shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property, left by persons dying intestate."

Recognizing that a change had been made by this amendment, in *Findlay* v. *Chicago & Grand Trunk R. Co.* (1895), 106 Mich 700, this Court held that the right of action given to an administrator by the

death act constituted an asset of the estate of the deceased. Later it was suggested by some members of this Court that the administrator, in bringing a suit to recover damages, was suing in a representative capacity, for injured claimants, and not solely to collect on an asset of the estate. In *In re Oldman's Estate* (1933), 264 Mich 32, the issue was whether the administrator should be permitted to file a cross-declaration against a claimant against decedent's estate for wrongful death of decedent. This Court was equally divided. Justice WIEST wrote (p 37):

"If the administrator has recovery against claimant, such is not in behalf of the estate, but for distribution to persons suffering pecuniary injury resulting from such death."

However, in *In re Venneman's Estate* (1938), 286 Mich 368, the adult son by a former marriage who made no claim of pecuniary loss was held entitled to share in the amount received by way of settlement by the widow for the wrongful death of her husband. In effect, *the Court determined that the damages recovered under the provisions of the death act as then in force were to be distributed among the beneficiaries not according to damage suffered by each of them but according to the proportions fixed by the statute of descent and distribution.*

The decision in this case resulted in substantial changes in the death act in 1939.

*(b) Recovery Under the Survival Act—An Estate Asset.*

The rationale of the survival act was that a right of action for injuries had vested in the decedent, prior to death, as the normal consequence of the wrong inflicted and that the right subsequently came to the personal representative, by survival, when

death ensued.[1]  Such an action, where begun by the representative, was for the recovery of damages measured by the injuries and disability suffered by the decedent while living.  The amount recovered became an asset of the estate.

In *Gates* v. *Beebe* (1912), 170 Mich 107, this Court approved the following statement in the trial court's charge (p 110):

"If the plaintiff is entitled to recover, she is entitled to recover such a sum as was spent in medical attendance upon the deceased, and, further, such a sum as you find deceased would have earned during the remainder of his life had he lived."

The survival act did not touch nor was it concerned with the measure of damages but left the same for determination according to the rules of the common law.  *Norblad* v. *Minneapolis, St. Paul & Sault Ste. Marie R. Co.* (1908), 156 Mich 697.

In *Love* v. *Detroit, Jackson & Chicago R. Co.* (1912), 170 Mich 1, it was recognized that a right or cause of action, as well as actions, survives, and upon subsequent death from injuries caused by negligent acts, the right of action becomes an asset of decedent's estate "to be collected and distributed in accordance with the administration statutes."

In *Lincoln* v. *Detroit & Mackinac R. Co.* (1914), 179 Mich 189, 196, the Court reiterated its position that the survival act created no new liability but prevented the lapsing by death of an old one.

*(c) Survival Act—Death Act—Separate and Distinct Causes of Action.*

Prior to 1939, the causes of action under the survival act and under the death act were treated as separate and distinct and not susceptible of com-

---

[1] RS 1846, ch 101, § 5, as amended by PA 1885, No 113.  See CL 1948, § 612.32.—REPORTER.

bination in one declaration. *Hurst* v. *Detroit City Railway* (1891), 84 Mich 539.

In *Carbary* v. *Detroit United Railway* (1909), 157 Mich 683, it was held that in an action for the negligent killing of plaintiff's intestate, a count under the survival act could be joined with a count under the death act; that the right of action under each act was an asset of the estate but there was not a double remedy, the joinder being permitted so as not to force the administrator to pursue one or the other at his peril; that since the administrator does not have a choice of remedies, he is not bound by an election; that he is limited to recovery on one count or the other; and that he cannot recover on both.

*(d) The 1939 Amendments to the Death Act.*

In 1939, without amending the survival act, the legislature made substantial changes in the death act by the enactment of PA 1939, No 297. There were four major changes:

*1.* Section 1 of the death act was expanded to include not only death of a person (as formerly) but also "injuries resulting in death." This did away with the old requirement of instantaneous death for maintaining a death-act action.

*2.* The following new sentence was added to § 1: "All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act." This had the effect of eliminating common-law remedies, if there were any. It also combined into one action the two remedies which previously had been considered to be separate and distinct.

*3.* Section 2 was rewritten to add new provisions regarding specific items for which recovery could now be had in a death action, such as medical, hospital, funeral and burial expenses for which the estate of decedent was liable, and "reasonable compensation" for pain and suffering. Obviously, re-

covery of any such sums relate to decedent and not to the surviving spouse and next of kin.

A further change made in § 2 by the 1939 amendment transformed the character of the "personal representative," who alone can bring the action, to that of a trustee or fiduciary acting on behalf of individual claimants suffering pecuniary injury. Under old § 2, whatever amount was recovered was distributed in the proportions provided by law for the distribution of personal property left by persons dying intestate. This had the effect of treating the sum recovered as damages as though it was an asset of the estate and distribution was made in complete disregard of the "pecuniary injury" suffered separately by the surviving spouse and next of kin as shown by the proofs.

Under new § 2, the individual claims are recognized. The trial court is required to advise the probate court by written opinion as to the amount of the recovery "representing the total pecuniary loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person, as shown by the evidence introduced upon the trial of such case."

The individual proportions of the total recovery going to the surviving spouse and next of kin as a class were to be determined on the basis of the evidence at the trial but the personal representative alone could bring the action, acting in the capacity of a statutory trustee. He was in no position to represent the various claimants except to lend his name in his official capacity so as to bring together in one action multiple claims. Under old § 2, the amount recovered was distributed by operation of law, not on the basis of individual proofs, and the

"personal representative" as plaintiff was the real party in interest.

*4.* A new § 3 was added which had the effect of repealing the survival act to the extent that its provisions were inconsistent with the provisions of the death act as amended in 1939.

As previously indicated, this Court prior to 1939 would not permit recovery under the survival act and also recovery under the death act by the personal representative. To approve of such action would have been to recognize a double recovery for a single wrong. With the adoption of the 1939 act, the concept became one of a single recovery to compensate for a double wrong.

In the case of *In re Olney's Estate* (1944), 309 Mich 65, a majority of the Court concluded that the statutory provisions for survival of actions still remained in force after 1939 and there is survival regardless of whether the death is that of the injured party or that of the tortfeasor. NORTH, C. J., writing for the majority, expressed the view (p 82):

"the obvious purpose of the 1939 act was to enable a person to bring his action under this statute regardless of whether there was instantaneous death or survival of the injured person, and to provide to what person or persons the damages recovered should be 'distributed'."

The above interpretation of the 1939 amendment was reaffirmed by a divided Court in *Grimes* v. *King* (1945), 311 Mich 399, 414. In that case it was argued that damages for loss of earnings could not be awarded where there was no evidence that anyone entitled to bring the action suffered a pecuniary loss. BUSHNELL, J., writing for the majority, disposed of the issue in this way (p 415):

"The administrator's right to recover is not limited to the pecuniary loss suffered by the husband for the value of his wife's services. The deceased had an established earning capacity as a music teacher and had she lived throughout her expectancy could have added to the worth of her estate in which her heirs at law would participate. Under the statutory provisions, *supra*, they would also participate in the distribution of the damages assessed and collected."

In the subsequent case of *Baker* v. *Slack* (1948), 319 Mich 703, this Court repudiated the rule announced in *Grimes* and, as a consequence of its decision, recovery in the *Baker* case was limited to funeral and burial expense in the amount of $190.

From this review of Michigan cases, it can be seen that this Court repeatedly grappled with the problem of recovery under the survival act and the death act. Once the two actions were merged in 1939, the problem of an adequate recovery in the case of a wage earner prematurely killed by a wrongful act was largely met by the holding in *Grimes* only to be stripped away by the holding in *Baker*. And what of the non-wage earner—a child, a wife or a parent—whose instantaneous wrongful death might inflict severe injury upon those members of the family left behind? How could that injury be compensated for if a strict earnings or loss-of-money-benefit test was all that was to be applied? This is the problem this Court struggled with in the 1950's and finally came to grips with in 1960.

### · 1960

In *Wycko* v. *Gnodtke,* 361 Mich 331, decided September 16, 1960, damages were claimed by the parents of a 14-year-old boy who was killed by the negligent operation of defendant's automobile. The jury brought in an award of $14,000, plus funeral

and burial expenses. The trial judge reduced the jury verdict by almost 50% because, as he said, he could not "bring himself to believe that any boy of the age of decedent * * * could have had the earning capacity indicated by this verdict, even under modern conditions." 361 Mich at p 354. On appeal, this Court reversed and remanded the case for entry of judgment upon the verdict of the jury. Justice TALBOT SMITH, writing for himself and Justices BLACK, EDWARDS, KAVANAGH and SOURIS, rejected the concept under the early English decisions that pecuniary loss meant only a money loss and the money loss from the death of a child meant only lost wages. Justice SMITH wrote (pp 338–340):

"[W]e now reject * * * the child-labor measure of the pecuniary loss suffered through the death of a minor child, namely, his probable wages less the cost of his keep. * * * [S]o an individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value and its loss forms a part of the 'value' of the life we seek to ascertain. *We are, it will be noted, restricting the losses to pecuniary losses, the actual money value of the life of the child, not the sorrow and anguish caused by its death.* This is not because these are not suffered and not because they are unreal. The genius of the common law is capable, were it left alone, of ascertaining such damages, but the legislative act creating the remedy forbids. Food, shelter, clothing, and companionship, however, obtainable on the open market, have an ascertainable money value." (Emphasis added.)

*1962*

In *Burns* v. *Van Laan* (1962), 367 Mich 485, the members of this Court unanimously agreed to a judgment of dismissal of a widow's action, brought in her individual capacity, to recover damages for loss of her husband's consortium caused by wrongful death. Judgment under the death act had previously been obtained against the same defendants in a suit by decedent's personal representative and this Court, for divergent reasons, held that such an action was the exclusive remedy. Thus, in the case of death rather than injury, the wrongful death act was held to encompass the damages a wife might recover. She does not have a separate cause of action against a tortfeasor who kills her husband as she does against the one who injured him. See *Montgomery* v. *Stephan* (1960), 359 Mich 33.

*1965*

In *Currie* v. *Fiting* (1965), 375 Mich 440, a majority of this Court upheld a determination by the trial judge allowing recovery and awarding damages in excess of funeral expenses to the administrator of decedent's estate in an action under the death act for the negligent killing of an unmarried woman, age 21 years and 11 months. Recovery was allowed for the loss of society and companionship by the surviving parents as sole heirs. There was no proof of financial dependency on decedent but there was a clear and compelling showing of dependency by the parents upon their daughter for companionship.

*Heider* v. *Michigan Sugar Company* (1965), 375 Mich 490, was an action by the administrator of the estates of two half-brothers, ages 12–1/2 and 8 years, who died by drowning in defendant's pond. My dissenting opinion discussed the measure of recovery

for pecuniary injury and the persons entitled thereto. The case was decided for defendant on the basis of no liability.

*Reisig* v. *Klusendorf* (1965), 375 Mich 519, was an action for damages by the administrator of the estate of an unmarried, 23-year-old man. At the time of his death in an automobile collision, he resided with his parents. Damages were sought for medical, hospital, funeral and burial expenses and for pecuniary injury consisting of loss of companionship. No claim was made for loss of services or support contributions. Justice KELLY, for himself and Justice DETHMERS, wrote (p 524):

"Judicial experience since *Wycko* strengthens my belief that the 'old rule' is preferable to the rule we adopted in *Wycko*."

I stated (p 525):

"No 'judicial experience' since then has demonstrated that this Court should not continue to permit adequate compensation for the wrong done nor has Justice KELLY set forth any in his opinion."

A majority of the Court applied the reasoning which controlled the decision in *Currie* v. *Fiting, supra,* in affirming a jury verdict for plaintiff in the amount of $10,000.

*Wilson* v. *Modern Mobile Homes, Inc.* (1965), 376 Mich 342, was a suit by the administrator for damages for the death of a ten-year-old child by electrocution caused by defective wiring of a house trailer. Appellant complained of the refusal of the trial judge to give a requested instruction that from any award for loss of companionship there must be deducted the cost for expenses of birth, clothing, food, et cetera, during the period that deceased lived, and there must also be deducted the pecuniary value of the companionship received during the same period,

the money value of the companionship to be based upon something obtainable in the open market. Chief Justice T. M. KAVANAGH, writing for four members of the Court, said (p 351):

"Defendant enumerates several reasons why this Court should not follow the holding of *Wycko, supra,* and should require deduction of the companionship, society and comfort received during the lifetime of the decedent, as well as the cost of procuring the companionship.

"We again reaffirm today the holding of *Wycko* that a parent may properly recover the cost of the acquisition of such society and comfort, and that a jury is capable of ascertaining such damages, fairly and equitably to all parties.

"*A jury in a death case, as stated in Wycko,* supra, *is required to compute the pecuniary loss suffered because of the taking of the life.* The pecuniary value of the life is composed of 'a compound of many elements.' No instruction to subtract, add, or multiply is necessary. Juries are to arrive at a determination as to the money value of a life, taking into consideration expenses and companionship as well as other relevant considerations introduced as evidence." (Emphasis added.)

Justice O'HARA concurred separately. Justices BLACK, DETHMERS, and KELLY dissented.[2]

### III. *Legislative Action and Inaction*

#### *1960*

This review of the cases makes clear that it was impossible for them to go unnoticed by the legisla-

[2] The purpose of the death act in imposing liability was again examined in the decision of three cases headed by *Mosier* v. *Carney* (1965), 376 Mich 532, where the ultimate issue for determination was the abolition of the doctrine of interspousal tort immunity. *Powers* v. *City of Troy* (1968), 380 Mich 160, involving an action

ture. Prior to 1960, the Michigan death act, as it had been amended from time to time since its original passage in 1848, was found in the Compiled Laws of 1948 at §§ 691.581 and 691.582, contained in a chapter along with numerous other sections as a supplement to the Judicature Act of 1915. In 1960, the same year in which *Wycko* was decided, the Michigan legislature had pending for consideration and passage House Bill No 1, Regular Session of 1960. This was a bill to enact a revised judicature act. Its proposed § 22.22 read in its entirety as follows:

"Sec. 22.22. (1) Whenever the death of a person is caused by wrongful act, neglect, or default, which, if death had not ensued, would have entitled the injured party to maintain an action and recover damage in respect thereof, then in every case the person who, or corporation, or other entity, which would have been liable if death had not ensued, shall be liable to the personal representative of the deceased person in an action for damages

"(a) for the wrongful death;

"(b) for the injuries suffered by the deceased person prior to death, including pain and suffering; and

"(c) for the reasonable value of the medical, hospital, funeral, and burial expenses incurred.

"(2) The damages recovered under (1)(a) above shall be the pecuniary injuries suffered as a result of the injury and death by the surviving spouse and next of kin who are of the class, who by law would be entitled to inherit the personal property of the deceased had he died intestate, and they shall be distributed to these persons in proportion to their pecuniary loss.

"(3) The damages recovered under (1)(b) above shall be distributed to those who by law would be

---

under the death act on behalf of the estate of a stillborn child, provoked further comment on the measure of damages in wrongful death cases.

entitled to inherit the personal property of the deceased had he died intestate.

"(4) The damages recovered under (1)(c) above shall be distributed to those proving claims therefor.

"(5) Within 30 days after the entry of judgment in a wrongful death action, the judge shall certify to the probate court having jurisdiction of the estate of the deceased person the amount of the judgment and the date of its entry and in writing shall advise the probate court of

"(a) the total amount awarded for pecuniary injury suffered by those qualified for distribution and the proportion suffered by each as shown by the evidence in the case;

"(b) the total amount awarded for injuries suffered by the deceased prior to death; and

"(c) the amount awarded for the reasonable value of the medical, hospital, funeral, and burial expenses."[3]

### *1961*

House Bill No 1 was not passed by the 1960 legislature. A new bill to revise the Judicature Act was introduced in the 1961 Regular Session as House Bill No 3. The language that had appeared in the 1960 session as § 22.22 of House Bill No 1 was completely re-drafted in House Bill No 3 and appeared as § 2922. As so re-drafted, it contained the identical language which had appeared in §§ 691.581 and 691.582, except for insignificant editorial changes.

---

[3] The same language with the addition of the words, "The probate court shall order the distribution of the proceeds awarded in this action as hereinbefore set out," had been published by the State Bar of Michigan under date of November 15, 1959, as a part of the printed Final Report of the Joint Committee of Michigan Procedural Revision, Part II, Proposed Statutes and Comments, pp 185, 186. The Preface on page iii of the Report contains the statement:

"We express our appreciation to Callaghan & Company for printing, without cost to the committee, the report in three parts, and for making available, a limited number of copies for distribution to the members of the legislature, the judges, and other persons who have helped the committee in its deliberations."

With the passage of House Bill No 3 of the Regular Session of 1961, § 2922 thereof became § 2922 of the Revised Judicature Act of 1961, being PA 1961, No 236 (CLS 1961, § 600.2922; Stat Ann 1962 Rev § 27A.2922).

The Revised Judicature Act of 1961 (PA 1961, No 236) was approved by the Governor on June 9, 1961. Its provisions took effect on January 1, 1963.

### 1965

In 1965, the legislature amended § 2922 of RJA by the passage of PA 1965, No 146. (The amendatory change is set forth in Justice Black's opinion.) The 1965 amendment to the wrongful death section of the act (§ 2922) took effect July 12, 1965, by an immediate effect provision. PA 1965, No 146. *Currie* v. *Fiting, supra,* was decided May 10, 1965. The cases of *Heider* v. *Michigan Sugar Company, supra,* and *Reisig* v. *Klusendorf, supra,* were decided the same day.

The foregoing legislative history of the wrongful death act shows clearly that its provisions had come to the attention of the legislature for both revision and amendment at the time of and subsequent to this Court's decision in *Wycko.* If legislative change was desired, certainly opportunity was present.

It will be recalled that after this Court's decision on November 10, 1938 in *In re Venneman's Estate, supra,* the legislature enacted the 1939 amendments to the death act on June 20, 1939. *In that situation the legislature acted in a little less than eight months from date of the Court's opinion to passage of legislation. In this present situation the legislature, charged with responsibility for enacting or amending laws in the determination and furtherance of the public policy of the state, has made no significant change in any of the provisions of the death act as*

*they appeared in the Compiled Laws of 1948 for over ten years since Wycko.*

It has long been recognized that where this Court has given an interpretation to a statute with no reaction from the legislature in the form of statutory revision, it may be assumed there is legislative acquiescence in the statute's meaning. *Even more persuasive is the rule that where the basic provisions of a statute have been construed by the courts and these provisions are subsequently re-enacted by the legislature, it may be assumed that the legislature acted with knowledge of the Court's decisions and that the legislature intended the re-enacted statute to carry the Court's interpretation with it.* See: *Mc-Evoy* v. *City of Sault Ste. Marie* (1904), 136 Mich 172; *Gwitt* v. *Foss* (1925), 230 Mich 8, 12; *In re Clayton Estate* (1955), 343 Mich 101, 106, 107; *Jeruzal* v. *Wayne County Drain Commissioner* (1957), 350 Mich 527, 534.

## IV. *Dependency*

In *Currie,* this Court declined to pass upon the provision of the Probate Code, PA 1939, No 288, chapter 2, § 115 (CL 1948, § 702.115 [Stat Ann 1962 Rev § 27.3178 (185)]). A majority of the Court held that any question of distribution under the code and construction of "dependency" was not before it. The same situation exists in this case. Ordinarily, it is time enough to construe and decide the meaning of a statute when the question before the Court requires such action.

Granted that the wrongful death and probate code provisions are unitary legislation, it does not follow that the decisions of this Court in *Wycko, Currie,* etc., are in conflict with the code.

In 1957, in a concurring opinion in *MacDonald* v. *Quimby,* 350 Mich 21, Justice BLACK gave his inter-

pretation of an eligible beneficiary of the cause of action brought by an administrator under the death act, in these words (p 34):

"Any 'next of kin,' *i.e.*, blood relative, is a rightful beneficiary in such case provided he or she *is shown to have been dependent in fact or law* on the decedent when death occurred and is a member of the statutory 'class' from which, in the variant circumstances of succession, the inheritor or inheritors of the personal estate of one dying intestate are selected." (Emphasis added.)

He arrived at the conclusion by relying on the provisions of §§ 114 and 115 of chapter 2 of the Probate Code which he construed together with §§ 1 and 2 of the death act as the unitary statutes of 1939. It will be recalled that in 1960 in *Wycko* Justice Black signed the opinion of Justice Talbot Smith in which dependency was analyzed in these terms (p 339):

"Moreover, just as an item of machinery forming part of a functioning industrial plant has a value over and above that of a similar item in a showroom, awaiting purchase, so an individual member of a family has a value to others as part of a functioning social and economic unit."

In *Currie* v. *Fiting* (1965), 375 Mich 440, Justice Black, after quoting § 115(4) of the Probate Code, said (p 471):

"The legislature wanted to make sure that only those persons who were legally or factually dependent upon the decedent for prospective services, prospective support, or continuity of contributions toward support should receive damages for 'pecuniary injury.'"

While I agree with what Justice Black wrote in *MacDonald* and with what he signed in *Wycko*, I

disagree with what he wrote in *Currie* and with what he writes today. The concept of "pecuniary loss" was enlarged in *Wycko*. Reference should be made to Justice SMITH's full elucidation of that concept in his opinions in *Wycko* and *Courtney* v. *Apple* (1956), 345 Mich 223. In sum, this Court found that just as damages can be allowed for pain and suffering to a living person injured by a tortfeasor, so also can damages be allowed when death results to that class of persons who are most injured by the death—the next of kin—since in such instance it *may be* they who have suffered a loss, *i.e.,* loss of companionship.

I see no difficulty in correlating dependency with the concept of "pecuniary loss" as now held by our cases. Justice BLACK foresaw the need for a "new and flexible interpretation" in 1957 when, writing in *MacDonald, supra,* and discussing the need to construe the death act and the Probate Code provisions together, he said (p 35):

> "It must be faced and then confessed that the mentioned enactments, if separately viewed, are fraught with patent as well as latent ambiguities. For instance, and in the case of probate-approved adjustment of a cause for wrongful death of an infant survived by parents, or of a wife survived solely by spouse, how can the probate court distribute proceeds under said section 115, subd 4, to 'dependents of the decedent' absent new and flexible interpretation—assisted by said section 2—of the word "dependents"?' "

Dependency upon another person arising out of companionship is quite as ascertainable as pain and suffering, perhaps even more so. Such dependency was clearly evident in *Currie* as it is in the present case. It is a factual determination and does not necessarily exist between next of kin. See *Heider* v.

*Michigan Sugar Company* (1965), 375 Mich 490. The problem is analyzed in appellee's brief as follows:

"Appellants also argue that it is easier to defend against excessive claims on account of pain and suffering than on account of loss of companionship. To the contrary, pain and suffering is largely an individual experience of short duration described in subjective terms. The extent and depth of society and companionship within a family group, on the other hand, involves several individuals in most cases and is observable by others over long periods of time. Thus, *it would seem easier to protect against excessive claims by ferreting out evidence of disharmony and lack of companionship than it would be to minimize the subjective descriptions of a person who suffers a broken back or a broken leg.* Certainly, it would be no more difficult, and even if more difficult, should not become a shield for a culpable wrongdoer." (Emphasis added.)

The legislature was familiar with the opinions of this Court dealing with the recovery of damages in cases of wrongful death and the manner of distribution to surviving spouse and next of kin when it had under consideration in 1960 a bill calling for a revised judicature act. The fact that a substitute provision was rejected and the existing provisions retained in the wrongful death section as enacted in the Revised Judicature Act of 1961 with subsequent amendment in 1965 shows more than passive acquiescence in the Court's interpretations of the statutes. It shows actual re-enactment of the statutes after this Court's interpretive opinions had been published for a sufficient time to permit their consideration by the members of the legislature, as well as by the bench and bar. I can see no reason now to abandon those holdings. To do so is to reject the affirmation of Justice Talbot Smith and a major-

ity of this Court in *Wycko* that life has value not only to the person who has been deprived of its enjoyment by a wrongful death but to the spouse and next of kin who have lost those benefits of association we summarize in the word "companionship."

But to return to the cases presently before us, it will be recalled that there was no dispute as to the wrongfulness of the deaths. The defendant admitted liability. The sole issue before the jury was damages. A verdict of $15,000 was returned to the mother's estate and $20,000 to the father's estate. If the measure of damages is to be that contended for by Justice BLACK, what amounts may be recovered upon remand and a new trial? The stipulated expenses of the mother's estate are $1120. The extent of her recovery is $1120. Consequently, there is no reason to remand in this case as there is no question for a jury. The expenses in the father's estate were shown to be $2550, to which amount a jury could assess damages for pain and suffering limited to the 42 hours which he survived. This would be the extent of the recovery by the father's estate. Nothing could be allowed to the two daughters for their loss of companionship of their father and mother whose lives were prematurely terminated by wrongful death.

I vote to affirm.

T. M. KAVANAGH, J., concurred with ADAMS, J.